TRACY A. ROHDE & another[1] *vs.* LAWRENCE GENERAL
HOSPITAL & others.[2]

No. 92-P-45.

Essex. February 11, 1993. - June 14, 1993.

Present: DREBEN, SMITH, & GILLERMAN, JJ.

*Medical Malpractice*, Tribunal, Hospital. *Negligence*, Medical malpractice, Hospital, Doctor, Nurse. *Witness*, Expert. *Proximate Cause.*

A patient's offer of proof of negligence on the part of a hospital, regarding its supervision of him after he had been admitted on a diagnosis of "acute psychotic episode," was sufficient for the medical malpractice tribunal established under G. L. c. 231, § 60B, to determine that the evidence raised a legitimate question of liability, where evidence was proffered that, at the time of his admission, the patient was delusional, disoriented, dangerous to others, and required hospitalization to avoid the likelihood of serious harm by reason of his mental illness; and that the injuries sustained by the patient when he escaped from the hospital, stole an automobile, and seriously injured himself proximately resulted from the hospital's failure of performance. [587-588]

A patient's offer of proof of negligence on the part of a doctor and two nurses, regarding a hospital's admission of the patient on a diagnosis of "acute psychotic episode" and his subsequent escape and serious injury resulting from an automobile accident, was not adequate for the medical malpractice tribunal established under G. L. c. 231, § 60B, to determine that the evidence raised a legitimate question of the doctor's and nurses' liability, where there was nothing in the evidence proffered as to what conduct, if any, of these individuals did not conform to accepted medical practice. [588-589]

CIVIL ACTION commenced in the Superior Court Department on November 8, 1990.

Motions to dismiss filed by the defendants Reeves and Lucas were heard by *John T. Ronan*, J., and a motion to dismiss and for entry of separate and final judgment filed by the

[1]Tammy Rohde.
[2]John W. Lucas, Marguerite Reeves, and Cheryl Edwards.

defendants Lawrence General Hospital and Edwards was heard by *John P. Forte*, J., sitting under statutory authority. ·

*Bryan J. Kerman* for the plaintiffs.

*Richard M. Haley* for Marguerite Reeves.

*Martin C. Foster* for Lawrence General Hospital & another.

*Edward T. Hinchey* for John W. Lucas.

GILLERMAN, J. A medical malpractice tribunal, appropriately convened[3] under G. L. c. 231, § 60B, found that the plaintiffs did not present sufficient evidence of negligence by any of the defendants to raise a legitimate question of liability for judicial inquiry. The plaintiffs declined to file the required bonds, and judgments were entered in the Superior Court dismissing the complaint against the four defendants. We conclude that the plaintiffs should have been allowed to proceed against Lawrence General Hospital without posting a bond, but we affirm the judgment in favor of the individual defendants.

We summarize the plaintiff Tracy A. Rohde's offer of proof consisting of his affidavit and medical records at Lawrence General Hospital (hospital), to determine whether the proffered evidence, viewed in a light most favorable to the plaintiffs, would, if substantiated at trial, be sufficient to withstand a motion for directed verdict. See *Little* v. *Rosenthal*, 376 Mass. 573, 578 (1978); *Kopycinski* v. *Aserkoff*, 410 Mass. 410, 415-416 (1991); *DiNozzi* v. *Lovejoy*, 20 Mass. App. Ct. 973, 974 (1985).

On November 12, 1987, shortly after 1:00 A.M., the Andover police brought Rohde to Lawrence General Hospital ("hospital") after finding him at the scene of a minor car accident expressing strange and irrational thoughts. Rohde was not physically injured, but the police thought he might have "some kind of mental problem." While being interviewed at the hospital, Rohde jumped from the carrier on

---

[3]The plaintiffs' initial argument is that the tribunal should not have been convened because there is no issue of medical malpractice. The argument is without merit, and requires no discussion.

which he had been placed, and assaulted a clinician. The police promptly handcuffed him to the carrier.

After examining Rohde, Dr. John Lucas, a defendant, recorded the diagnosis "acute psychotic episode" on the hospital's emergency admitting form. At the bottom of the form Lucas entered the order "leather restraints." Lucas also completed a written application to the hospital, on a form provided by the Department of Mental Health, for the temporary hospitalization of Rohde under the provisions of G. L. c. 123, § 12.[4] Lucas stated in this application that in his opinion Rohde "requires hospitalization so as to avoid the likelihood of serious harm by reason of mental illness," that Rohde was delusional, not oriented as to day, month or year, and that he was "dangerous to others: assaulted EPS worker — patient has bizarre behavior: he cut up money and credit cards." The transfer of Rohde to a licensed mental health facility could not take place until certain test results were obtained, and he remained in the hospital's care for the night.

The nurse's notes of the defendant Cheryl Edwards, the "primary nurse" on duty until 7:00 A.M., record that at 6:00 A.M. Rohde's handcuffs were removed and he was secured in four-point (each arm and each leg) leather restraints.

Some time after 6:00 A.M. the plaintiff woke up to find himself alone in his room, experiencing strange and bizarre thoughts. "I was paranoid . . . I thought they were out to get me and my family. I thought to myself that I had to try to get out of the hospital and that it was a good time to try since nobody was in the room or in sight." Rohde managed to free himself from the restraints, which he says were not securely fastened, and fled from the hospital. At 7:15 A.M. he was seen[5] running down the hallway, out of the hospital and into an unlocked automobile (whose engine was running) in

---

[4]The defendants argue on appeal that any standards in G. L. c. 123, § 12, or in regulations of the Department of Mental Health (DMH) are inapplicable because the hospital is not a DMH licensed facility. This argument was not raised below, however, and we do not consider it here.

[5]The defendant Marguerite Reeves, the "primary nurse" who began her shift at 7:00 A.M., witnessed the plaintiff's escape.

the hospital parking lot. He drove off in the automobile, and soon crashed into a fence and suffered serious injuries. Rohde's suit alleges that the defendants were negligent in failing to secure the restraints on him, and in failing to supervise him while he was under restraint.

The hospital and the three individual defendants join in the main argument that the decision of the medical panel was correct because the plaintiffs failed to offer expert testimony to the effect that the conduct of the hospital and the individual defendants did not conform to accepted medical practice in the circumstances presented, and because they failed to proffer evidence that Rohde's injuries proximately resulted from the defendants' failure of performance. *Kapp* v. *Ballantine*, 380 Mass. 186, 193 (1980); *Bradford* v. *Baystate Med. Center*, 415 Mass. 202, 206 (1993).

"[A]lthough exceptional, the facts in a malpractice case may be such that [jurors] of their common knowledge and experience are able to pass on [the] question [of negligence]." *Malone* v. *Bianchi*, 318 Mass. 179, 182 (1945). See also *Polonsky* v. *Union Hosp.*, 11 Mass. App. Ct. 622, 624 (1981) (collecting and discussing cases which permit juries to find medical practitioners negligent without the assistance of expert testimony). Here, Rohde had been diagnosed as undergoing an acute psychotic episode. He had assaulted a health care provider, and was placed in handcuffs. In the opinion of Dr. Lucas, Rohde was delusional, disoriented, dangerous to others, and required hospitalization to avoid the likelihood of serious harm by reason of his mental illness. Rohde had been admitted as a patient of the hospital, and the case could hardly be clearer for the responsibility of the hospital[6] to place restraints on Rohde, as ordered by Lucas, and to provide the necessary supervision of Rohde while under restraints. This is a "garden-variety case[] where . . . attendance was needed but lacking at the time of need. . . . Such cases do not call for the paraphernalia of experts

---

[6]The hospital, Edwards, and Lucas concede the first prong of *Kapp* v. *Ballantine*, 380 Mass. 186, 193 (1980) — that the required professional relationship between Rohde and these defendants has been shown to exist.

. . . ." *Bennett* v. *Winthrop Community Hosp.*, 21 Mass. App. Ct. 979, 981-982 (1986) (no expert testimony required to sustain verdict of liability of hospital for failing to place patient exhibiting "frenetic conduct" in restraints, and for failing to provide proper supervision of patient). See also G. L. c. 123, § 21, sixth par., as amended by St. 1984, c. 464 ("[N]o person shall be kept in restraint without a person in attendance specially trained to understand, assist and afford therapy to the person in restraint").[7]

So too, as against the hospital, there is a sufficient offer of proof regarding proximate cause. The plaintiff crashed his car and was admitted to the hospital because he was in a psychotic, delusional state. Lucas had expressed the opinion that the hospitalization of Rohde was necessary to avoid "the likelihood of serious harm. . . ." The foreseeable harm included the possibility of injury to himself, which, in fact, occurred. Rohde managed to steal another car and seriously injure himself, producing the very outcome that Dr. Lucas attempted to avoid. "Proximate cause does not require the particular act which caused injury to have been foreseeable, only that the general character and probability of the injury be foreseeable." *Glick* v. *Prince Italian Foods, Inc.*, 25 Mass. App. Ct. 901, 902 (1987). In sum, the offer of proof against the hospital was sufficient.

However, the plaintiffs' offer of proof as to the individual defendants fails because of the absence of any proffered evidence as to what conduct, if any, of these defendants did not conform to accepted medical practice.[8]

As to Dr. Lucas, his only connection to the alleged negligent acts is his order that the plaintiff be put in restraints. There is no evidence that he was present when the restraints were placed on the plaintiff, or that "good medical practice"

---

[7]Section 21 is binding on private facilities authorized to receive patients committed, as here, under G. L. c. 123, § 12(*a*). There was nothing in the record before the tribunal to indicate that the hospital was not so authorized.

[8]Of course, on remand, the individual defendants' conduct remains relevant to the hospital's negligence, and to its possible vicarious liability. See *Bradford* v. *Baystate Med. Center*, *supra* at 206.

required him to place the restraints on the patient, or to supervise the patient himself. See *Withington* v. *Jennings*, 253 Mass. 484, 486 (1925).

As to nurse Reeves, she has not admitted that a nurse-patient relationship existed and the plaintiff offered no evidence on that issue. The first prong of *Kapp* v. *Ballantine*, *supra*, has not been met. See note 6, *supra*. Further, Reeves was not on duty at 6:00 A.M. when the restraints were placed on Rohde, and she was on duty for less than fifteen minutes before the plaintiff escaped. So far as appears in the record before the panel, Reeves merely saw Rohde fleeing down the corridor and out to the parking lot. Without an offer of proof as to what Reeves' duties were, and that what Reeves did or failed to do was inconsistent with the practice of a reasonably skillful nurse, the plaintiffs' offer fails. Compare *Delicata* v. *Bourlesses*, 9 Mass. App. Ct. 713, 718-719 (1980).

The plaintiffs' offer also fails as to nurse Edwards. While Edwards concedes the nurse-patient relationship, Rohde's affidavit never connects Edwards to any of the events he experienced at the hospital; the affidavit merely establishes that "a female nurse and a second person (a man)" placed Rohde in restraints. While we conclude that the absence of a competent person in attendance on Rohde while he was in restraints would be sufficient evidence of negligence, there is nothing in the record to suggest that the responsibility for providing for such attendance was on Edwards. The fact that the hospital record establishes Edwards as the "primary nurse," and that she recorded the entries regarding Rohde in the nurses' notes, without more, is insufficient to maintain that the conduct of Edwards fell short of that required of a reasonably skillful nurse. *Ibid.* Compare *Bradford* v. *Baystate Med. Center*, 415 Mass. at 206 n.5 (1993).

The judgment of dismissal as against Lawrence General Hospital, the related order for a bond, the finding and the decision of the tribunal as to Lawrence General Hospital are all vacated; a new finding and decision shall be entered that the plaintiffs' offer of proof as to Lawrence General Hospital is sufficient to raise a legitimate question of liability appro-

priate for judicial inquiry. The judgments of dismissal as against the defendants John W. Lucas, Cheryl Edwards and Marguerite Reeves are affirmed.

*So ordered.*