JOSEPH ST. GERMAIN *vs.* BERNARD A. PFEIFER & others.[1]

Middlesex. April 4, 1994. - August 3, 1994.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & GREANEY, JJ.

*Medical Malpractice*, Tribunal, Standard of care, Bond. *Negligence*, Medical malpractice, Doctor, Nurse, Standard of care. *Witness*, Expert. *Statute*, Construction.

A medical malpractice tribunal erred in determining that a plaintiff's offer of proof with respect to a registered nurse did not raise a legitimate question of liability appropriate for judicial inquiry, where the plaintiff's offer of proof contained evidence which, if substantiated, would reasonably support an inference that a nurse-patient relationship existed between the nurse and the plaintiff, that the nurse's performance did not conform to good medical practice and that injury to the plaintiff resulted therefrom. [516-517]

A medical malpractice tribunal erred in determining that a plaintiff's offer of proof with respect to an orthopedic surgeon did not raise a legitimate question of liability appropriate for judicial inquiry, where the offer of proof contained evidence which, if substantiated, would reasonably support an inference that a doctor-patient relationship existed between the surgeon and the plaintiff, that the surgeon's performance did not conform to good medical practice, and that injury to the plaintiff resulted therefrom. [517-518]

A medical malpractice tribunal erred in determining that a plaintiff's offer of proof with respect to a first-year resident did not raise a legitimate question of liability appropriate for judicial inquiry, where the plaintiff's offer of proof contained evidence which, if substantiated, would reasonably support an inference that a doctor-patient relationship existed between the resident and the plaintiff, that the resident's conduct did not conform to good medical practice, and that injury to the plaintiff resulted therefrom; further, this court declined to accept the doctor's argument that a first-year resident should be held to a lower standard of care than that of more senior physicians. [518-519]

In a medical malpractice action, where the plaintiff's offer of proof to the malpractice tribunal did not establish a doctor-patient relationship between a neurosurgeon and the plaintiff at the time the plaintiff suffered

---

[1]Glen Seidman, Stephen R. Freidberg, and Kristin Bartelson.

the injury complained of, the tribunal correctly determined that the plaintiff's offer of proof as to the neurosurgeon was not sufficient to raise a legitimate question of liability appropriate for judicial inquiry. [519-520]

In a medical malpractice action in which the plaintiff filed a motion under G. L. c. 231, § 60B, to reduce the amount of the required bond on the basis of indigency, the judge erred in dismissing the plaintiff's claim for failure to post the bond within thirty days during which time the motion to reduce the bond was pending: the thirty-day period for filing the bond begins to run when the judge rules on the motion to reduce the bond. [520-522]

CIVIL ACTION commenced in the Superior Court Department on August 16, 1991.

A motion to dismiss filed by the defendant Bartelson was heard by *Julian T. Houston*, J., and a motion to dismiss filed by the defendants Pfeifer, Seidman, and Freidberg was heard by *George A. O'Toole, Jr.*, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John W. Ranucci*, of Rhode Island, for the plaintiff.

*John DiPietrantonio* for Kristin Bartelson.

*Douglas N. Perlo* for Stephen R. Freidberg.

*Edward D. Shoulkin* for Glen Seidman.

*Philip E. Murray, Jr.*, for Bernard A. Pfeifer.

ABRAMS, J. These appeals arise out of a medical malpractice action which the plaintiff, Joseph St. Germain, brought against Drs. Bernard A. Pfeifer, Glen Seidman, Stephen R. Freidberg, and Nurse Kristin Bartelson. Two medical malpractice tribunals convened to evaluate the plaintiff's claims pursuant to G. L. c. 231, § 60B (1992 ed.).[2] The first tribu-

---

[2]General Laws c. 231, § 60B (1992 ed.), provides in part: "Every action for malpractice, error or mistake against a provider of health care shall be heard by a tribunal consisting of a single justice of the superior court, a physician licensed to practice medicine in the commonwealth . . . and an attorney authorized to practice law in the commonwealth, at which hearing the plaintiff shall present an offer of proof and said tribunal shall determine if the evidence presented if properly substantiated is sufficient to raise a legitimate question of liability appropriate for judicial in-

nal, which considered the plaintiff's claim against Nurse Bartelson, among others, determined that the plaintiff's offer of proof with respect to Nurse Bartelson was insufficient to raise a legitimate question of liability appropriate for judicial inquiry. Consequently, in order to proceed with his malpractice claim against Nurse Bartelson, the plaintiff was required to post a bond within thirty days of the docketing of the tribunal's decision. See note 2, *supra.* The plaintiff did not do so. After the thirty-day period for filing the bond expired, Bartelson made a motion to dismiss the plaintiff's claim based on his failure to post the bond. A Superior Court judge allowed this motion to dismiss and, pursuant to Mass. R. Civ. P. 54 (*b*), 365 Mass. 820 (1974), separate and final judgment was entered dismissing the plaintiff's claims against Bartelson. A Superior Court judge allowed the plaintiff's motion to extend the time for filing a notice of appeal. See Mass. R. App. P. 4 (c), as amended, 378 Mass. 928 (1979). The plaintiff appealed.

The second tribunal, which considered the plaintiff's claims against the three defendant doctors, determined that the plaintiff's offers of proof with respect to Drs. Bernard Pfeifer, Glen Seidman, and Stephen Freidberg were insufficient to raise a legitimate question of liability appropriate for judicial inquiry.[3] As with Nurse Bartelson, the plaintiff did not file the required bond with respect to Drs. Pfeifer, Seidman, or Freidberg. However, with respect to these defendant

---

quiry . . . . If a finding is made for the defendant or defendants in the case the plaintiff may pursue the claim through the usual judicial process only upon filing bond in the amount of six thousand dollars in the aggregate secured by cash or its equivalent with the clerk of the court in which the case is pending, payable to the defendant or defendants in the case for costs assessed, including witness and experts fees and attorneys fees if the plaintiff does not prevail in the final judgment. Said single justice may, within his discretion, increase the amount of the bond required to be filed. If said bond is not posted within thirty days of the tribunal's finding the action shall be dismissed. Upon motion filed by the plaintiff, and a determination by the court that the plaintiff is indigent said justice may reduce the amount of the bond but may not eliminate the requirement thereof."

[3]The tribunal's lawyer member dissented on that determination as to Drs. Pfeifer and Seidman.

doctors, the plaintiff did file a motion to reduce the bond on the basis of indigency. See note 2, *supra*. This motion was not acted on by the court either before the expiration of the thirty-day period or at any time thereafter. After the thirty-day period for filing the bond expired, defendants Pfeifer, Seidman, and Freidberg made a motion to dismiss the plaintiff's claim based on his failure to post the bond. A Superior Court judge allowed this motion to dismiss and, pursuant to Mass. R. Civ. P. 54 (b), separate and final judgment was entered dismissing the plaintiff's claims against these defendants. The plaintiff appealed from the dismissal of his complaint.

In his appeal, the plaintiff contends that the tribunals erred in determining that his offers of proof with respect to Nurse Bartelson and Drs. Pfeifer, Seidman, and Freidberg were insufficient to raise a legitimate question of liability appropriate for judicial inquiry, and that the motion judge erred in dismissing his claims against the defendant doctors for failure to post the required bond while his motion to reduce the bond was pending. We transferred the appeal to this court on our own initiative and now hold that the medical malpractice tribunals erred in determining that the plaintiff's offers of proof with respect to Nurse Bartelson and Drs. Pfeifer and Seidman were insufficient to raise a legitimate question of liability appropriate for judicial inquiry. We further hold that the motion judge erred in dismissing the plaintiff's claims against Dr. Freidberg for failure to post the required bond while the plaintiff's motion to reduce the bond was pending.

1. *The facts.* On August 19, 1988, the plaintiff underwent a mid-lumbar osteotomy performed by Dr. Bernard Pfeifer, an orthopedic surgeon, and Dr. Stephen Freidberg, a neurosurgeon, to alleviate a debilitating spinal deformity. As part of this procedure, fixation hooks and rods were inserted into the plaintiff's spine.

Dr. Pfeifer's postoperative plan was to confine the plaintiff to his hospital bed for the four to five days following the sur-

gery.[4] Contrary to this plan, at 10 A.M. on August 21, 1988, Dr. Glen Seidman, a first-year orthopedic resident,[5] ordered that the plaintiff be given a "warm and form lumbar bandage" (a soft orthopedic support) and be moved "out of bed to chair today." Dr. Seidman wrote both of these orders in the "physician orders" section of the plaintiff's chart. However, in the "progress notes" section of the plaintiff's chart, Dr. Seidman only noted his order for the "warm and form bandage."

At approximately noon on August 21, 1988, Dr. Pfeifer acknowledged Dr. Seidman's "progress note" concerning the "warm and form bandage" and added to the note that the plaintiff was to be x-rayed the next day and, "if okay," was to be moved out of bed to a "tilt table." Dr. Pfeifer apparently did not see the order to move the plaintiff which Dr. Seidman entered in the "physician orders" section of the plaintiff's chart. The "physician orders" and "progress notes" sections of the plaintiff's chart were not on the same page.

The orders of both Dr. Seidman and Dr. Pfeifer were noted by the charge nurse, Kristin Bartelson. Pursuant to Dr. Seidman's order, the nurse on duty in the early morning of August 22, 1988, encouraged the plaintiff to get out of bed and walk. As the plaintiff stood up and took a step, he heard a loud snapping noise in his back and fell backward onto the bed screaming in pain. When Dr. Pfeifer arrived shortly thereafter, he yelled at the nurse, "You should never have moved him! Why in hell did you move him!"

As a result of the plaintiff's movement, the hooks and rods which had been inserted in his spine to hold it together "slipped out" of position. The corrective surgery which the

---

[4]According to the plaintiff's affidavit, prior to surgery, Dr. Pfeifer outlined his postoperative plans as follows: "Dr. Pfeifer told me that a couple of days after the surgery, I would be cast for a supportive jacket. He told me that he would hopefully have the jacket in four or five days, and that once he had gotten the jacket, he would get it on me and get me up."

[5]The term "resident" denotes a medical school graduate who is pursuing training in a chosen field of medicine to become qualified in a specific area. At the completion of the residency, the physician is eligible to take a national board examination to become certified in the field.

plaintiff underwent to re-position this hardware was not successful.

2. *The offers of proof.* Under G. L. c. 231, § 60B, the medical malpractice tribunal must determine whether the plaintiff's offer of proof presents evidence which, if substantiated, raises a legitimate question of liability for judicial inquiry. See note 2, *supra.* In order to raise such a question of liability, a medical malpractice plaintiff must show (1) the existence of a doctor or nurse-patient relationship, (2) that the performance of the doctor or nurse did not conform to good medical practice, and (3) that damage resulted therefrom. See *Kapp* v. *Ballantine*, 380 Mass. 186, 193 (1980); *Gugino* v. *Harvard Community Health Plan*, 380 Mass. 464, 468 (1980). In evaluating a plaintiff's offer of proof, the tribunal must apply a standard comparable to that which a trial judge would employ in determining whether to allow a defendant's motion for a directed verdict. See *Little* v. *Rosenthal*, 376 Mass. 573, 578 (1978). Pursuant to this standard, a medical malpractice tribunal must conclude that the plaintiff's offer of proof raises a legitimate question of liability appropriate for judicial inquiry if "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff." *Dobos* v. *Driscoll*, 404 Mass. 634, 656, cert. denied sub nom. *Kehoe* v. *Dobos*, 493 U.S. 850 (1989), and cases cited.

a. *Nurse Kristin Bartelson.* With respect to his claim against Nurse Kristin Bartelson, the plaintiff presented to the medical malpractice tribunal the affidavit of an expert which stated that "As the R.N. giving written notation to Dr. Seidman's orders, . . . Bartelson owed a duty of care to [the plaintiff] to either carry out the orders or, if not assigned to direct care, to effectively communicate the orders to the assigned care giver. She should have been aware of [the plaintiff's] care plan and should have known of and reported the inconsistent intentions of Dr. Seidman and Dr. Pfeifer regarding [the plaintiff's] movement. . . . In my opinion, it is reasonably certain that had Kristin Bartelson

been aware of [the plaintiff's] care plan, effectively communicated orders to the assigned care givers, and been aware of and reported the inconsistent intentions of Dr. Seidman and Dr. Pfeifer regarding [the plaintiff's] movement, [the plaintiff] would not have suffered the injuries requiring his further surgery."

Because the plaintiff's offer of proof with respect to his claim against Nurse Bartelson contained evidence which, if substantiated, would reasonably support an inference that a nurse-patient relationship existed between Nurse Bartelson and the plaintiff, that Nurse Bartelson's performance did not conform to good medical practice, and that injury to the plaintiff resulted therefrom, the tribunal erred in determining that the plaintiff's offer of proof as to Nurse Bartelson did not raise a legitimate question of liability appropriate for judicial inquiry.

b. *Dr. Bernard Pfeifer.* With respect to his claim against Dr. Bernard Pfeifer, the plaintiff presented to the tribunal an affidavit from an expert which read as follows:

"DEVIATION FROM THE ACCEPTABLE MEDICAL STANDARDS:

"The records clearly indicate that the intended postoperative plan was not adhered to. Breach of that plan took place on the second postoperative day . . . when Dr. Seidman, on his own volition, gave an order for sitting [the plaintiff] out of bed, having prescribed a soft bandage. By nature, the 'warm and form bandage' has very little immobilizing effect, far less than necessary to protect the internal hardware. Two hours later, Dr. Pfeifer registered a different intent in his progress notes, 'use a tilt table if the x-rays are okay.' However, he did not countermand the sit out of bed order of Dr. Seidman, nor did he document his intent to use the tilt table as an official order. . . . In my opinion, based on reasonable medical certainty, Dr. Pfeifer failed his duty to communicate clearly his postoperative ambulation plan for the benefit of the staff under his direct control. The outcome of this failure was the unfortunate out of bed order by Dr. Seidman. Although Dr. Pfeifer had a different intent, he

failed to countermand Dr. Seidman's order. Additionally, he failed to translate his intent order into an official order for the benefit of the nursing staff. Had he articulated his plan to his Resident, or countermanded Dr. Seidman's order, or placed a clear order for a tilt table, it is more than probable that the resulting injury to [the plaintiff], leading to a second major surgery and ending with permanent neuropathy, would not have happened."

Because the plaintiff's offer of proof with respect to his claim against Dr. Pfeifer contained evidence which, if substantiated, would reasonably support an inference that a doctor-patient relationship existed between Pfeifer and the plaintiff, that Pfeifer's performance did not conform to good medical practice, and that injury to the plaintiff resulted therefrom, the tribunal erred in determining that the plaintiff's offer of proof as to Pfeifer did not raise a legitimate question of liability appropriate for judicial inquiry.

c. *Dr. Glen Seidman.* With respect to his claim against Dr. Seidman, the plaintiff presented to the tribunal an affidavit from an expert which stated that "Dr. Seidman failed his duty by not knowing, or not inquiring about the intended postoperative plan of the operating surgeon. He took it upon himself to put a sit out of bed order on the second postoperative day, without prior consultation with the operating surgeon, and *in breach of the normal acceptable standards. . . .* Had he known or inquired about the operating surgeon['s] plan, it's more likely than not that his fateful error would have been avoided [and] . . . that the sequelae that resulted in the second surgery, ending with permanent nerve damage, would . . . have been avoided" (emphasis added).

Dr. Seidman asserts that the plaintiff's offer of proof as to him was insufficient because, in determining that his performance did not conform to good medical practice, the plaintiff's expert did not apply the duty of care applicable to first-year residents. Dr. Seidman offers no support for his position that a first-year resident should be held to a lower standard of care than more senior physicians. While this is-

sue has not yet been addressed in Massachusetts, see, e.g., *Aceto* v. *Dougherty*, 415 Mass. 654, 658 (1993), it has been considered in two other jurisdictions. In *Centman* v. *Cobb*, 581 N.E.2d 1286, 1289 (Ind. App. 1991), the Court of Appeals of Indiana held that interns and first-year residents are "practitioners of medicine required to exercise the same standard of care applicable to physicians with unlimited licenses to practice." And in *Jenkins* v. *Clark*, 7 Ohio App. 3d 93, 101 (1982), the Court of Appeals of Ohio noted that a trial court judge acted properly in instructing that the applicable standard of care in a medical malpractice case involving a first-year resident was "that of reasonably careful physicians[,] . . . not that of interns or residents." We agree with these opinions and we decline to apply a lower standard of care to residents from that we apply to other physicians.

Because the plaintiff's offer of proof with respect to his claim against Dr. Seidman contained evidence which, if substantiated, would reasonably support an inference that a doctor-patient relationship existed between Seidman and the plaintiff, that Seidman's performance did not conform to good medical practice, and that injury to the plaintiff resulted therefrom, the tribunal erred in determining that the plaintiff's offer of proof as to Dr. Seidman did not raise a legitimate question of liability appropriate for judicial inquiry.

d. *Dr. Stephen Freidberg.* With respect to his claim against Dr. Stephen Freidberg, the plaintiff presented to the tribunal an affidavit from an expert which stated that "Dr. Freidberg . . . was the surgeon under whose name [the plaintiff] was admitted. He sat with [the plaintiff] on the day of the surgery and 'carefully described the risks and benefits of the surgery to [the plaintiff].' He was the co-surgeon and he himself performed the first half of the surgery. It was his duty to check on [the plaintiff] postoperatively. Instead, [the plaintiff] was seen by Dr. Freidberg's physician['s] assistant on the first and on the second postoperative days. These physician['s] assistants clearly did not know what the ambulation plan was. Had Dr. Freidberg made himself available

during the fateful postoperative day two, it is more than likely that the appropriate ambulation plan would have been adhered to. It would have been more than likely that the complications resulting from the non protected out of bed activity of [the plaintiff], with the resulting permanent damage, would not have taken place."

In order to raise a legitimate question of liability appropriate for judicial inquiry with respect to his claim against Dr. Freidberg, the plaintiff had to establish that a doctor-patient relationship existed between Dr. Freidberg and himself. The plaintiff's offer of proof did not do this. Immediately after the operation, Dr. Freidberg transferred the plaintiff to the care of Dr. Pfeifer. On the record before us, there is no evidence that Dr. Freidberg attended the plaintiff after the transfer. The plaintiff's expert did not opine that this transfer was improper. Thus, at the time the plaintiff suffered the injury complained of in his complaint, no doctor-patient relationship existed between the plaintiff and Dr. Freidberg. See *Rohde* v. *Lawrence Gen. Hosp.*, 34 Mass. App. Ct. 584, 589 (1993). Therefore, the medical malpractice tribunal correctly determined that the plaintiff's offer of proof as to Dr. Freidberg was not sufficient to raise a legitimate question of liability appropriate for judicial inquiry.

3. *The failure to post a bond.* Dr. Freidberg asserts that the plaintiff is foreclosed from proceeding against him on appeal because the plaintiff failed to file a bond within thirty days of the tribunal's determination.[6] We do not agree.

While G. L. c. 231, § 60B, expressly provides a means by which an indigent plaintiff may move to have the amount of the bond reduced, the statute is silent on the question of whether the filing of such a motion will automatically stay

---

[6]Because we conclude that the plaintiff's offer of proof as to both Drs. Pfeifer and Seidman contained evidence which, if substantiated, would raise a legitimate question of liability appropriate for judicial inquiry, the issue whether the plaintiff had to file a bond to proceed with his claims against these defendants is moot. See *Kapp* v. *Ballantine*, 380 Mass. 186, 190-191 (1980); *McMahon* v. *Glixman*, 379 Mass. 60, 63-64 (1979).

the thirty-day deadline for posting the bond. We have not yet addressed this issue.

In determining that the filing of a motion to reduce the bond on the basis of indigency, which the plaintiff submitted with respect to his claim against Dr. Freidberg, did not automatically stay the deadline for posting the bond, the motion judge relied on "the absence of any invitation in the statutory language to allow flexibility in application of the time period." The motion judge's strict interpretation of G. L. c. 231, § 60B, might be true to its provision that "[i]f said bond is not posted within thirty days of the tribunal's finding the action shall be dismissed." However, "time and again, we have stated that we should not accept the literal meaning of the words of a statute without regard for that statute's purpose and history." *Sterilite Corp.* v. *Continental Casualty Co.*, 397 Mass. 837, 839 (1986). See *Bongiorno* v. *Liberty Mut. Ins. Co.*, 417 Mass. 396 (1994).

"The statutory provision for reduction of bond is intended to avoid constitutional problems arising from denying to indigents access to the legal system." *Denton* v. *Beth Israel Hosp.*, 392 Mass. 277, 280 (1984). "The Legislature did not intend that the procedures of § 60B should unreasonably obstruct the prosecution of meritorious malpractice claims . . . ." *Hanley* v. *Polanzak*, 8 Mass. App. Ct. 270, 274 (1979). Thus, the bond reduction process set forth in G. L. c. 231, § 60B, was intended to alleviate the burden which the statute's bond requirement imposes on indigent plaintiffs.

The burden of acting on a motion to reduce the bond is on the tribunal judge. See G. L. c. 231, § 60B. See also *Denton, supra* at 281 n.5. In *Perez* v. *Bay State Ambulance & Hosp. Rental Serv., Inc.*, 413 Mass. 670, 677-678 (1992), we said that, in determining the standards and procedures under G. L. c. 231, § 60B, the judge should look to the standards and practices under G. L. c. 261, § 27A-27D. Under § 27C (2), if an affidavit of indigency "appears regular . . . and requests a waiver, . . . the clerk shall grant such request forthwith without hearing and without the necessity

of appearance of any party or counsel." Under G. L. c. 231, § 60B, the tribunal judge may reduce but not eliminate the bond. Once the judge determines that the plaintiff is indigent, he or she must rule on the request to reduce the amount of the bond before the thirty-day period for filing the bond begins to run. Any other result would render the statute's bond reduction provisions for indigents meaningless.[7]

4. *Conclusion.* We conclude that the medical malpractice tribunals erred in determining that the plaintiff's offers of proof with respect to Nurse Bartelson and Drs. Pfeifer and Seidman were insufficient to raise a legitimate question of liability appropriate for judicial inquiry. We further conclude that the motion judge erred in dismissing the plaintiff's claims against Dr. Freidberg for failure to post the required bond while the plaintiff's motion to reduce the bond was pending. This case is remanded to the Superior Court for a ruling on the plaintiff's motion to reduce the bond and for further proceedings consistent with this opinion.

*So ordered.*

---

[7]Additionally, any other result would effectively take away a plaintiff's right of appeal "on the issue whether there was abuse of discretion in a failure to reduce the required bond appropriately, on proof of the plaintiff's indigency." *Kapp* v. *Ballantine, supra* at 191.