MONA L. HAYWOOD, administratrix,[1] vs. ROXANNE RECHEN
& others.[2]

No. 97-P-0401.

Middlesex. February 11, 1998. - July 15, 1998.

Present: KASS, GILLERMAN, & FLANNERY, JJ.

*Medical Malpractice,* Appeal, Standard of care. *Negligence,* Medical
malpractice, Doctor, Standard of care. *Doctor,* Doctor-patient relationship.

In a medical malpractice action brought against the director of health services
at a college, the plaintiff's offer of proof did not demonstrate that the direc-
tor was responsible for the failure to "flag" a student's medical file regard-
ing an underlying medical condition, which failure contributed to the
student's death, or that he had actual supervisory authority over personnel
who failed to "flag" the file, or that he had a doctor-patient relationship
with the student; accordingly, the medical malpractice tribunal correctly
determined that the offer of proof was not sufficient to raise a legitimate
question of liability appropriate for judicial inquiry. [190-191]

CIVIL ACTION commenced in the Superior Court Department on
July 26, 1995.

The case was heard by *Charles T. Spurlock,* J., on a motion
to dismiss.

*David P. Dwork* for the plaintiff.

*Alice Olsen Mann* for James T. Corkins.

FLANNERY, J. Twenty-one year old Alanna Joy Haywood, a
student at Williams College (college), died at North Adams
Regional Hospital in North Adams, Massachusetts, on January
11, 1993. On July 26, 1995, Mona L. Haywood, administratrix
of the estate of Alanna Joy Haywood, filed a complaint alleging
medical malpractice against the college and four of its
employees, Roxanne Rechen, R.N., Patricia A. Austin, R.N.,

---

[1] Of the estate of Alanna Joy Haywood.

[2] Patricia A. Austin, Dorothy Johnson, Daniel M. Sullivan, Williams Col-
lege, and James T. Corkins.

Dorothy Johnson, R.N., and Daniel M. Sullivan, M.D. A tribunal was convened to evaluate the plaintiff's claims pursuant to G. L. c. 231, § 60B,[3] and it determined that the plaintiff's offer of proof with respect to Dr. Sullivan, Nurse Rechen, Nurse Austin, Nurse Johnson, and the college was sufficient to raise a legitimate question of liability appropriate for judicial inquiry.

On March 27, 1996, the plaintiff moved to add as a defendant James T. Corkins, M.D., director of health services at the college, and to file an amended complaint. The motion was allowed on March 29, 1996. A second tribunal considered the plaintiff's claims against the added physician and determined that the plaintiff's offer of proof with respect to Dr. Corkins was insufficient to raise a legitimate question of liability appropriate for judicial inquiry. Therefore, in order to proceed with the claims against Dr. Corkins, the plaintiff had to post a bond within thirty days of the tribunal's finding. See G. L. c. 231, § 60B. The plaintiff failed to file the bond, and Dr. Corkins moved to dismiss the action against him. On December 11, 1996, separate and final judgment was entered dismissing the plaintiff's claims against Dr. Corkins pursuant to Mass.R.Civ. P. 54(b), 365 Mass. 821 (1974). The plaintiff appeals.

On appeal, the plaintiff contends that the tribunal erred in concluding that the offer of proof with respect to Dr. Corkins was insufficient to raise a legitimate question of liability appropriate for judicial inquiry. We affirm.

---

[3]The first paragraph of G. L. c. 231, § 60B, as inserted by St. 1975, c. 362, § 5, states in part: "Every action for malpractice, error or mistake against a provider of health care shall be heard by a tribunal consisting of a single justice of the superior court, a physician licensed to practice medicine in the commonwealth . . . and an attorney authorized to practice law in the commonwealth, at which hearing the plaintiff shall present an offer of proof and said tribunal shall determine if the evidence presented if properly substantiated is sufficient to raise a legitimate question of liability appropriate for judicial inquiry or whether the plaintiff's case is merely an unfortunate medical result."

The sixth paragraph of § 60B, as amended by St. 1986, c. 351, § 21, provides: "If a finding is made for the defendant or defendants in the case the plaintiff may pursue the claim through the usual judicial process only upon filing bond in the amount of six thousand dollars in the aggregate secured by cash or its equivalent with the clerk of the court in which the case is pending, payable to the defendant or defendants in the case for costs assessed, including witness and experts fees and attorneys fees if the plaintiff does not prevail in the final judgment. . . . If said bond is not posted within thirty days of the tribunal's finding the action shall be dismissed."

1. *Background.* The following facts are taken from the plaintiff's offer of proof. Ms. Haywood entered the college as a freshman in 1989. Between September, 1989, and January, 1993, she often used the college dispensary when she was ill.

On January 10, 1993, at 6:30 A.M., Ms. Haywood went to the dispensary with complaints of foot, jaw, and throat pain. The impression was that she probably had a foot sprain and possible growth of wisdom teeth. She was told to return the next day or sooner, if needed. Ms. Haywood returned about six and one-half hours later and was admitted to the dispensary. The nurse examined her head and ankle and noted that Ms. Haywood had a "strange affect." The nurse administered codeine, without a doctor's order.

Ms. Haywood's condition steadily deteriorated and by 11:30 P.M. she complained that her whole body ached, she could not walk, and she was unable to open her jaw. She also had mental status changes, vomiting, and a fever. Dr. Sullivan was notified at 11:30 P.M. but did not come to examine Ms. Haywood that evening.

The following morning, between 5:10 A.M. and 5:30 A.M., Dr. Sullivan examined Ms. Haywood. This was done only after Ms. Haywood insisted, at 4:30 A.M., that she be taken to an emergency room. Dr. Sullivan gave her no medications but arranged for her to go to the hospital by campus security. Ms. Haywood arrived at North Adams Regional Hospital at approximately 6:20 A.M. She died two hours later. The autopsy report listed the cause of death as meningococcal septicemis with blood cultures positive for neisseria meningitides.

Dr. Rodney M. Wishnow and Dr. Robert Sundel, the plaintiff's experts, whose affidavits were attached to the offer of proof, both opined that the negligence of the three nurses who attended Ms. Haywood during her in-patient stay at the college dispensary, and of Dr. Sullivan, were causally related to the death of Ms. Haywood, who required immediate care for her septic condition.

The plaintiff's experts also opined that deficiency in Ms. Haywood's medical records at the college contributed to her death. Ms. Haywood was under the care of Dr. Frederick G. Kantrowitz, a specialist in rheumatology and metabolic bone disease, for a systemic rheumatic illness from approximately June, 1991. In November, 1991, Dr. Kantrowitz wrote a letter to the "Department of Health" at the college advising that Ms.

Haywood was suffering from a systemic rheumatic illness. Moreover, he stated that she was anemic and leukopenic.

Dr. Wishnow stated that Dr. Kantrowitz's report to the college regarding Ms. Haywood's medical problems should have forewarned the medical personnel at the dispensary that Ms. Haywood probably had a greater than normal susceptibility to infection, with a diminished ability to overcome such infection if it occurred. Accordingly, both Dr. Wishnow and Dr. Sundel opined that Ms. Haywood's reported condition should have been "flagged" in her records at the dispensary in some manner so that any health care provider would be made aware of her problem. Dr. Kantrowitz's letter was retained in Ms. Haywood's medical record, but it was not "flagged" therein. The experts concluded that the failure to "flag" Ms. Haywood's file with the information about her condition was causally related to her death.

Nurse Johnson testified in her deposition that the college has a procedure for "flagging" students' special health risks. These health risks are noted in red ink on the inside cover of students' charts so that they are readily available to health care providers upon review of the charts. She explained that Dr. Corkins sees all students when they are admitted to the college, and if they have any underlying conditions, they are "put down right away." Dr. Corkins would then instruct another person to do the flagging.

2. *Sufficiency of the offer of proof as to Dr. Corkins.* In accordance with G. L. c. 231, § 60B, the medical malpractice tribunal must determine if the plaintiff's offer of proof contains evidence which, "if properly substantiated[,] is sufficient to raise a legitimate question of liability appropriate for judicial inquiry." G. L. c. 231, § 60B. To raise a question of liability against a physician, the plaintiff's offer of proof must show that "(1) a doctor-patient relationship existed; (2) the doctor did not conform to accepted medical standards in performing his duties with regard to the patient; and (3) damage resulted from this failure to conform." *Perez* v. *Bay State Ambulance & Hosp. Rental Serv., Inc.*, 413, Mass. 670, 676 (1992), citing *Kapp* v. *Ballantine*, 380 Mass. 186, 193 (1980).

"In evaluating a plaintiff's offer of proof, the tribunal must apply a standard comparable to that which a trial judge would employ in determining whether to allow a defendant's motion for a directed verdict." *St. Germain* v. *Pfeifer*, 418 Mass. 511,

516 (1994), citing *Little* v. *Rosenthal*, 376 Mass. 573, 578 (1978). Under this standard, "a medical malpractice tribunal must conclude that the plaintiff's offer of proof raises a legitimate question of liability appropriate for judicial inquiry if 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff.' "[4] *St. Germain* v. *Pfeifer, supra,* quoting from *Dobos* v. *Driscoll,* 404 Mass. 634, 656, cert. denied sub nom. *Kehoe* v. *Dobos,* 493 U.S. 850 (1989).

The plaintiff's case against Dr. Corkins rested on the opinions of Dr. Wishnow and Dr. Sundel and the deposition testimony of Nurse Johnson. As mentioned above, the affidavits of Dr. Wishnow[5] and Dr. Sundel,[6] taken together, opined that proper procedure demanded that the substance of Dr. Kantrowitz's letter regarding Ms. Haywood's special health problems, which was sent to the "Department of Health" at the college, be clearly set forth in some "problem list," prominently placed in Ms. Haywood's record, so that care providers would not have to search through her record to find this important information. The experts stated that this was not done and, therefore, "prob-

---

[4]The finding of the tribunal consists entirely of the statutory conclusion, without explanation.

[5]Dr. Wishnow in his affidavit stated in part that "Ms. Haywood was a student at Williams College. In November, 1991 a Dr. Kantrowitz, a specialist in rheumatology and metabolic bone disease, wrote to the Dispensary advising that Ms. Haywood was suffering from a systemic rheumatic illness. He also stated that she was anemic and leukopenic. This report should have forewarned the medical personnel at the Clinic that Ms. Haywood probably had a greater than normal susceptibility to infection with a diminished ability to overcome such infection if it occurred.

"Ms. Haywood's condition should have been flagged in her records in some manner so that any care provider would be made aware of her problem. This was not done and probably played a part in the failure of the nurse and the doctor on January 10, 1993 to appreciate the seriousness of the patient's condition . . . ."

[6]Dr. Sundel opined in his affidavit that "[t]here was a deficiency in the patient's records either through poor Dispensary procedures or through a failure of someone connected with the dispensary to follow proper procedures. When Dr. Kantrowitz's letter was received in 1991, proper procedure demanded that the substance of the report be clearly set forth in some "Problem List", prominently placed in the patient's chart, so that care providers would not have to search through the patient's record to find this important information. This was not done and is probably, at least in part, causally related to the nurse's failure to speak to a doctor at the appropriate time."

ably" contributed to Ms. Haywood's condition on January 10, 1993.

Nurse Johnson testified that the college has a procedure for making the special health risks of students known to treating medical personnel. She explained that the patients' special conditions are "flagged" on the inside cover of their medical charts by a notation in red ink. During Nurse Johnson's deposition, plaintiff's counsel asked her who at the college was responsible for "flagging." The following exchange resulted:

> *Q.* "I meant to ask you, Mrs. Johnson, how does . . . flagging, get onto that folder? Is it done by a nurse, doctor, or when?"
>
> *A.* "Doctor Corkins. . . ."
>
> " . . . ."
>
> *A.* "Doctor Corkins reviews. . . ."
>
> *Q.* "I think you said he reviews the charts before something?"
>
> *A.* "He always, he always sees the students when they are admitted to Williams and if they have any underlying conditions, it's put down right away."

We conclude that the evidence, examined "indulgently in favor of the plaintiff," *LaFond* v. *Casey*, 43 Mass. App. Ct. 233, 237 (1997), and cases cited, fails to show that Dr. Corkins did not conform to good medical practice. The offer of proof does contain evidence which would reasonably support an inference that the failure to "flag" Ms. Haywood's medical file deviated from proper medical procedure and contributed to her death. On the record before us, however, there is no evidence that Dr. Corkins was responsible for this deviation. Nurse Johnson's testimony merely establishes that Dr. Corkins was initially responsible for "flagging" health problems of students upon admission to the college. The evidence fails to establish an ongoing duty or practice of Dr. Corkins to "flag" health problems that come to light after a student's entry into school, as was the case for Ms. Haywood.

The plaintiff also argues that Dr. Corkins should be liable on a respondeat superior theory (as director of health services at

the college) and because there was a doctor-patient relationship between him and Ms. Haywood. These arguments lack merit. With respect to respondeat superior, there was no showing that Dr. Corkins, as the college's director of health services, bore or exercised, either in fact or in law, actual supervisory responsibility over the activities of dispensary personnel. Similarly, if the existence of a doctor-patient relationship arguably would obligate Dr. Corkins to flag the file, a duty which the plaintiff assumes but does not establish, the evidence before the tribunal, including the plaintiffs' experts' filings, fails to establish that relationship. Dr. Corkins interacted with Ms. Haywood when she arrived at the college, and her medical records identify him as her "attending physician" on occasion thereafter. However, there was no evidence explaining "attending physician" in terms of a doctor-patient relationship, the plaintiff offered no other proof of such a relationship, and Dr. Corkins does not concede the point. There is no showing that he was involved in the treatment of her final illness (cf. *Lambley* v. *Kameny*, 43 Mass. App. Ct. 277, 283-284 [1997]), and surely his title would not make him the personal physician of all of the college's students.

Accordingly, the offer of proof was deficient and the tribunal correctly found that it was not sufficient to raise a legitimate question of liability appropriate for judicial inquiry.

*Judgment affirmed.*