·   BETTY JOHNSTON *vs.* SHERMAN D. STEIN. No. 89-P-833. November 28, 1990. *Medical Malpractice*, Tribunal, Consent to medical treatment, Standard of care. *Negligence*, Medical malpractice.

On appeal, the plaintiff Johnston does not assert, as part of her medical malpractice claim, that the surgical procedure which Dr. Stein, the defendant, performed on her back was negligently executed. Rather, she ascribes negligence to the decision to do the operation and casts her claim in terms of Dr. Stein having "misrepresented" her condition. Thus misled, Johnston complains that she was not capable of having given informed consent to the surgery. Johnston's claim was placed before a medical malpractice tribunal (see G. L. c. 231, § 60B) which, upon examination of the offer of proof, determined that she had not raised a legitimate question of liability warranting judicial inquiry. Johnston did not file a bond and, upon the expiration of more than thirty days after entry of the tribunal's finding, the complaint was dismissed. G. L. c. 231, § 60B.

---

[3]That order was stayed by a single justice of this court.

1. *Jurisdiction of the medical malpractice tribunal.* By formulating her grievance against Dr. Stein as a wilful misrepresentation that her preoperative diagnostic tests read positive for disc herniation, Johnston provokes a threshold question whether the tort of intentional misrepresentation is a proper subject for a medical malpractice tribunal. We think that it is. Performing surgery without the plaintiff's informed consent is professional misconduct, and complaints alleging it are subject to the screening mechanism of a medical malpractice tribunal. *Lubanes* v. *George*, 386 Mass. 320, 324-325 (1982). The legislative design of G. L. c. 231, § 60B, for medical malpractice tribunals contemplates that all treatment-related claims be referred in the first instance to a tribunal. *Little* v. *Rosenthal*, 376 Mass. 573, 576 (1978). *Salem Orthopedic Surgeons, Inc.* v. *Quinn*, 377 Mass. 514, 519 (1979). *Harnish* v. *Children's Hosp. Med. Center*, 387 Mass. 152, 154-155 (1982). Whether expressed as a misreading (which would connote negligence) of the patient's X-rays and CAT scans or a misrepresentation, the core of Johnston's complaint is that surgery proceeded on assumptions falsely communicated to her. That is a complaint related to treatment. What is at stake is a malpractice claim and we look to that substance, not the legal theory adopted. See *Schenker* v. *Binns*, 18 Mass. App. Ct. 404, 406-407 (1984).

2. *Adequacy of offer of proof to the tribunal.* The applicable standard is familiar. Would the materials (expert opinions, depositions, hospital records, affidavits, etc.) submitted in an offer of proof to the medical malpractice tribunal, if substantiated at trial, be sufficient to withstand a motion for a directed verdict? *Little* v. *Rosenthal*, 376 Mass. at 578. *Kapp* v. *Ballantine*, 380 Mass. 186, 191-192 (1980). *Flagg* v. *Scott*, 9 Mass. App. Ct. 811 (1980). *DiNozzi* v. *Lovejoy*, 20. Mass. App. Ct. 973 (1985). Apart from Dr. Stein's impression of disc herniation, there were three medical opinions offered to the tribunal. Dr. Brendler had examined the patient for the workers' compensation insurer. He wrote that both the preoperative and the postoperative myelograms looked normal to him. He does not say that Dr. Stein misdiagnosed Johnston's condition, that the surgery was ill advised, or that her treatment had departed from the applicable standard of care. Dr. Brendler gives his opinion that CAT scans made in 1983 do not demonstrate ruptured discs. The surgery, however, was done in 1982 and had removed the ruptured disc. Dr. Wespic, who furnished an opinion to Johnston's counsel, said only that "[o]n the preoperative myelogram I see no specific abonormalities which I can be sure of." He did not state that there had been any deviation from applicable standards of care, that surgery had been unnecessary, or that it had been improperly performed. A third opinion, obtained, as in the case of Dr. Wespic, at plaintiff's counsel's request, was provided by Dr. Light, who wrote that, "The myelogram shows some minor abnormalities which were interpreted as normal by the radiologist and abnormal by Dr. Stein . . . I personally do not believe that this myelogram is normal." Dr. Light thought the findings inconclusive

and expressed his view that patients should be apprised of ambiguities in diagnostic tests. There is no assertion that Dr. Stein interpreted the myelogram erroneously or that he treated Johnston in a manner which deviated from applicable standards of care. From an affidavit submitted by Johnston, a finder of fact would not be in a position to infer that Dr. Stein had given his patient insufficient information for an informed consent. The essence of a complaint of medical malpractice is that the physician engaged by the plaintiff departed from "the standard of care and skill of the average member of the profession practising the specialty, taking into account the advances in the profession." *Brune* v. *Belinkoff*, 354 Mass. 102, 109 (1968). Nothing in the material offered to the tribunal by the plaintiff enabled a finder of fact, acting reasonably, to infer that the defendant had fallen below such a standard.

*Judgment affirmed.*

The case was submitted on briefs.
*Phyllis P. Ryan* for the plaintiff.
*Deborah A. Bloom* for the defendant.