MARK T. LAMBLEY *vs.* STUART M. KAMENY & another.[1]

No. 96-P-59.

Essex. January 14, 1997. - August 1, 1997.

Present: BROWN, KASS, & LAURENCE, JJ.

*Medical Malpractice,* Tribunal. *Negligence,* Medical malpractice, Psychiatrist.
   *Statute,* Construction.

A medical malpractice tribunal appropriately exercised jurisdiction under
   G. L. 231, § 60B, to consider in the first instance a claim that a
   psychotherapist hired by an employer to screen prospective employees
   negligently misdiagnosed an applicant, with the result that the applicant
   was not hired and suffered other damages; where the therapist had a duty
   to exercise reasonable professional care and skill in dealing with such ap-
   plicants [280-285], however, the tribunal erred in deciding that the
   plaintiff's offer of proof was insufficient and the matter was remanded for
   further proceedings [285-288].

CIVIL ACTION commenced in the Superior Court Department on
April 21, 1994.

A motion to dismiss was considered by *Isaac Borenstein,* J.,
and entry of a separate and final judgment was ordered by him.

*Michael P. Hickey* for the plaintiff.

*Joan Eldridge* for Stuart M. Kameny.

LAURENCE, J. This appeal presents the novel question whether
the medical malpractice tribunal screening process established
by G. L. c. 231, § 60B,[2] applies to a tort action against a

---

[1]Donald A. Seckler.

[2]General Laws c. 231, § 60B, as inserted by St. 1975, c. 362, § 5, provides
in the first paragraph: "Every action for malpractice, error or mistake against
a provider of health care shall be heard by a tribunal consisting of a single
justice of the superior court, a physician licensed to practice medicine in the
commonwealth . . . and an attorney authorized to practice law in the com-
monwealth, at which hearing the plaintiff shall present an offer of proof and
said tribunal shall determine if the evidence presented if properly substanti-
ated is sufficient to raise a legitimate question of liability appropriate for

psychiatrist brought by a job applicant who was required by the prospective employer to undergo psychological testing, was erroneously diagnosed as psychologically unfit by the psychiatrist, and was consequently passed over for the job on the basis of that diagnosis. Over the jurisdictional objection of the job applicant (appellant Mark T. Lambley), a medical malpractice tribunal entertained the complaint and determined that Lambley's offer of proof against the psychiatrist (appellee Stuart M. Kameny) was insufficient. We conclude that, although jurisdiction properly lay with the tribunal, the judgment of dismissal must be vacated because the offer of proof was adequate.

1. *Background.* The facts underlying the controversy are somewhat more complex than the generality on the jurisdictional issue posed above. In March, 1991, Lambley applied for a position as a reserve police officer with the city of Lynn. Pursuant to rules of the State Department of Personnel Administration (DPA), every applicant for a police position has to undergo psychological fitness screening. In April, 1991, the Lynn personnel director, exercising authority delegated by DPA, informed Lambley that he was to receive his psychological screening from two psychotherapists, Donald Seckler, a psychologist, and a psychiatrist, who turned out to be Dr. Kameny. Seckler and Kameny were aware of the purpose of their evaluation of Lambley and that Lambley would be entitled to an explanation from them of any adverse testing results.

After interviewing and testing Lambley,[3] Seckler and Kameny submitted a joint report to the Lynn personnel director stating that they had diagnosed Lambley as having a "passive aggressive personality disorder" which was incompatible with police work and recommending that he not be hired.[4] Based upon their evaluation, the personnel director notified Lambley

judicial inquiry or whether the plaintiff's case is merely an unfortunate medical result."

[3]The screening included administration of a number of psychological tests, including the Minnesota Multiphasic Personality Inventory, the Millon Clinical Multiaxial Inventory, the California Psychological Inventory, the Press Test, the Draw-A-Person Test, the Rorschach Inkblot Test, the Thematic Apperception Test, and the Bender Gestalt Test.

[4]Nowhere in their joint report did Seckler and Kameny mention their application of the diagnostic criteria for such a disorder prescribed by the recognized standard authority in the area at that time, the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Third Edition, Revised (DSM-III-R).

that he was "potentially psychologically unsuitable" for the police position he sought and was being rejected.

Lambley filed an appeal from his rejection with the State Civil Service Commission, pursuant to G. L. c. 31, § 2(*b*). In July, 1992, after a hearing, the commission overturned Seckler's and Kameny's psychological evaluation of Lambley as constituting a "casual" and "cavalier" analysis unsupported by the testing done, inconsistent with DSM-III-R criteria (see note 4, *supra*) and in actuality representing a "smokescreen" designed to mask the real reasons for Lambley's rejection, allegedly questionable incidents in his background rather than his psychological fitness.[5] Supporting that conclusion, Seckler had testified at the hearing before the commission that Lambley's testing had not in fact supported a diagnosis of passive-aggressive personality disorder. While recognizing that the concerns raised by the background incidents were legitimate and could be overtly considered in subsequent proceedings, the commission ordered Lambley's eligibility for the police position to be revived.[6]

Lambley subsequently commenced a Superior Court action against Seckler and Kameny, asserting counts for "medical malpractice/negligence," "interference with advantageous business relations" and "defamation," and demanding as relief damages for "loss of wages, employment opportunities and mental anguish." The action was referred over his objection for a hearing before a medical malpractice tribunal. There Lambley continued to argue that his claims were not within the tribunal's jurisdiction, but also presented an offer of proof, which included, in addition to evidence of Seckler's recantation before the Civil Service Commission, a report by Steven N. Shapse, a clinical

---

[5]Reportedly, after two years of college Lambley had been placed on academic suspension and left school; he had defaulted on a student loan and on a number of credit cards; he was three months behind on a mortgage; he had a number of motor vehicle charges; he had made an unwarranted claim for unemployment compensation; he was divorced; and he had held and resigned from three different jobs between 1982 and 1990. The commission noted that under the city of Lynn's own procedures, the psychological fitness evaluation was the last step in the hiring process and that the city had had an earlier opportunity to reject him on the basis of an unsatisfactory background check but had, apparently inadvertently, failed to do so, leaving an unsatisfactory psychological diagnosis as the only remaining procedurally acceptable basis for bypassing Lambley.

[6]The record does not reveal whether Lambley pressed his application following the commission's decision or his application's ultimate fate.

psychologist. Shapse concluded, from his review and reevaluation of the tests administered by Seckler and Kameny and their report, that the results of those tests "d[id] *not* warrant . . . [the] diagnosis" of passive-aggressive personality disorder, which diagnosis he characterized as "unfounded"; and he opined, based upon those results and the criteria of DSM-III-R, that Lambley did *not* suffer from any such disorder. The tribunal determined that Lambley's presentation sufficiently raised a legitimate question of liability appropriate for judicial inquiry. as to Seckler but not as to Kameny. Lambley did not post the required bond as to his allegations against Dr. Kameny, and a Superior Court judge accordingly allowed Kameny's motion to dismiss.[7] G. L. c. 231, § 60B, sixth par.

2. *The jurisdiction of the tribunal.* Lambley asserts that his claims against Dr. Kameny were not within the tribunal's jurisdiction because his three causes of action are not "treatment related," the damages sought do not flow from "medical results," he was not a patient of Kameny, and his "interference with advantageous business relations" count charges an intentional tort that does not involve a medical decision, medical malpractice, or a physician-patient relationship. We see no merit in his contentions on this record and conclude that the tribunal's exercise of jurisdiction was appropriate.

The first count of Lambley's complaint, which is expressly labeled "medical malpractice," alleges that "Kameny . . . and . . . Seckler . . . were negligent in their evaluation and/or examination of the plaintiff in that they . . . failed to exercise the degree of care and skill of the average qualified member of the medical profession practicing a specialty taking into account the advances in the profession . . . [and] [e]rroneously diagnosed plaintiff's condition." These are the classic allegations of an action for medical malpractice. See *Brune* v. *Belinkoff*, 354 Mass. 102, 109 (1968); Nolan & Sartorio, Tort Law § 278 (2d ed. 1989); Perlin, Mottla's Proof of Cases in Massachusetts: Civil §§ 24.1-24.3 (3d ed. 1992); Prosser & Keeton, The Law of Torts § 32, at 186-189 (5th ed. 1984).

Although the label attached to a pleading or motion is far less important than its substance, see Smith & Zobel, Rules Practice § 7.11 (1974); 5 Wright & Miller, Federal Practice and Procedure § 1196 (2d ed. 1990), here form followed substance.

---

[7]The judge also allowed Kameny's motion for entry of a separate and final judgment pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974).

The central issues raised by Lambley's complaint, which underlie every one of his three counts, are the nature and extent of Kameny's interview, examination, and evaluation of Lambley; the soundness of Kameny's methodology; and the accuracy of his conclusions and diagnosis drawn therefrom. These issues are the essence of a medical malpractice case.[8] Moreover, the damages Lambley seeks — loss of wages; other economic detriment; and pain, suffering and embarrassment — are precisely the sort contemplated under the malpractice tribunal scheme. G. L. c. 231, §§ 60F(*a*)(2)&(3).

In short, Lambley's claims realistically constitute a charge that Dr. Kameny was "negligent or mistaken in terms of [his] medical judgment" regarding Lambley's psychological condition; such an impugning of Kameny's psychiatric judgment would appear to be well within the jurisdiction of a medical malpractice tribunal. See *Leininger* v. *Franklin Med. Center*, 404 Mass. 245, 248 (1989) (contrasting an evaluation of a psychiatrist's failure to comply with the civil commitment statute, which did not fall within the competence of a tribunal, with mistakes in "medical decisions," including "medical judgment or treatment," which do); *Johnston* v. *Stein*, 29 Mass. App. Ct. 996, 997 (1990) (the question of tribunal jurisdiction is resolved by analyzing "the core of [the plaintiff's] complaint" and is a matter of its "substance, not the legal theory adopted").

The language and purpose of the statute support tribunal jurisdiction. The first words of G. L. c. 231, § 60B, as inserted by St. 1975, c. 362, § 5, proclaim that "*[e]very* action for malpractice, *error or mistake* against a provider of health care[9] shall be heard by a tribunal . . ." (emphasis added). The first judicial decision discussing the statute stressed "every" and "shall" as words of universal application when medical malpractice issues are involved in an action: "There is no apparent exception." *Austin* v. *Boston Univ. Hosp.*, 372 Mass.

---

[8]Even if only one of Lambley's counts sounded in physician negligence, he would nonetheless have to go before a medical malpractice tribunal on that count before proceeding in court with his other theories of liability. *Lubanes* v. *George*, 386 Mass. 320, 327 (1982). See *Little* v. *Rosenthal*, 376 Mass. 573, 576-577 (1978) (when the same set of facts supports both a malpractice and nonmalpractice claim for G. L. c. 93A damages, the malpractice tribunal has jurisdiction to consider the merits of both).

[9]There is no contention that, as a psychiatrist, Kameny is not a health care provider under the statute. See G. L. c. 231, § 60B, seventh par., which also covers Seckler as a psychologist.

654, 660 (1977) (also holding, *id*. at 655 n.4, that "[c]learly, a claim of negligence falls into [the] class of action" described by the words "[e]very action for malpractice, error or mistake"). See also *Little* v. *Rosenthal*, 376 Mass. 573, 576-577 (1978) (citing *Austin* and the sentence just quoted and twice reiterating that the tribunal requirement covers "error and mistake" by a health care provider, as well as "malpractice").

A broad reading of those words that brings Lambley's action within the ambit of § 60B is also in accord with the remedial purpose of the statute. The tribunal screening mechanism was created to discourage frivolous claims against health care providers, the defense of which would tend to increase malpractice insurance premiums to levels that would create undue financial hardship for providers, causing an increase in the cost of medical services, or even discourage provider entry into or continuation in practice, all to the public's ultimate detriment. See *Austin*, 372 Mass. at 655 n.4; *Paro* v. *Longwood Hosp.*, 373 Mass. 645, 647 (1977); *Little* v. *Rosenthal*, 376 Mass. at 577; *Brodie* v. *Gardner Pierce Nursing & Rest Home, Inc.*, 9 Mass. App. Ct. 639, 641 (1980).

Consistent with that statutory purpose, even claims not sounding in traditional malpractice — unlike those involved here — which directly implicate the professional judgment or competence of a provider have been held subject to tribunal screening. See *Salem Orthopedic Surgeons, Inc.* v. *Quinn*, 377 Mass. 514, 520 (1979) (action for breach of contract to produce specific medical result is so subject); *Lubanes* v. *George*, 386 Mass. 320, 325 (1982) (action alleging doctor's performance of surgery without plaintiff's consent is appropriate for tribunal screening). The courts have consistently generalized the intended sweep of § 60B as encompassing "all treatment-related claims," whatever their label or underlying legal theory. *Little* v. *Rosenthal*, 376 Mass. at 576.[10] To exclude the challenge to professional diagnosis that is the essence of Lambley's action

---

[10]Lambley asserts that his claims are not treatment-related because he neither sought nor received any treatment from Kameny. His argument ignores reality — he was examined by Kameny for the sole purpose of Kameny's providing a medical diagnosis and opinion as to Lambley's psychological status, the results of which would be communicated to Lambley — as well as the cases holding that medical malpractice is a tort which covers actions against medical professionals, including psychiatrists, for improper diagnoses that result in damages. See *Levinson* v. *Ruble*, 307 Mass. 562, 566 (1940); *Vartanian* v. *Berman*, 311 Mass. 249, 253-254 (1942); *Kapp* v. *Ballantine*, 380

from the screening process would result in the legislative purpose being "partially thwarted." *Id.* at 577.

Lambley nonetheless maintains that, since he was not a patient of Dr. Kameny, no physician-patient relationship existed and, therefore, his claims should not have been transferred to the tribunal. It is true that an oft-repeated tenet of tribunal jurisprudence is that a medical malpractice plaintiff must demonstrate the existence of a doctor-patient relationship, as well as physician performance not conforming to good medical practice and resulting damage. *Kapp* v. *Ballantine*, 380 Mass. 186, 193 (1980). *Rahilly* v. *North Adams Regional Hosp.*, 36 Mass. App. Ct. 714, 717 (1994). That formula, however, relates to the test for evaluating the sufficiency of a plaintiff's offer of proof in order to raise a legitimate question of liability for judicial inquiry. No Massachusetts case had held the existence of a formal doctor-patient relationship to be a sine qua non of tribunal jurisdiction.[11]

Assuming, however, without deciding, that such a relationship or its equivalent is a jurisdictional prerequisite, it sufficiently existed here. The essence of the doctor-patient relationship is the undertaking by a physician to diagnose and/or treat the person being diagnosed or treated with reasonable professional skill. The law imposes on the practitioner a duty of care to the extent of conforming to certain prevailing standards of

Mass. 186, 193-194 (1980); *Stepakoff* v. *Kantar*, 393 Mass. 836, 838-841 (1985).

[11]Lambley cites *Thomasson* v. *Diethelm*, 457 So. 2d 397, 399 (Ala. 1984), and *Midtown Community Mental Health Center* v. *Estate of Gahl*, 540 N.E.2d 1259, 1262 (Ind. App. 1989), for the proposition that a malpractice plaintiff must be a patient of the defendant physician for the tribunal to screen the case. Those decisions are, however, distinguishable because, in contrast to the breadth of the first sentence of G. L. c. 231, § 60B, the governing statutes in both States expressly defined malpractice in terms of the duty of care owed to a "patient." Although courts in a few jurisdictions have held that the existence of a duty of care by a physician is predicated on an explicit physician-patient relationship, and have accordingly held that physicians engaged by prospective employers to examine job applicants either owe the examinee (as opposed to the employer) no duty at all or only a duty to avoid injury to the examinee in the course of the examination, see Annot., Physician's Duties and Liabilities to Person Examined Pursuant to Physician's Contract With Such Person's Prospective or Actual Employer or Insurer, 10 A.L.R.3d 1071 (1966), that is not the law in Massachusetts. Here, such physicians must exercise reasonable care and skill in examining and diagnosing an examinee referred by a third party. See *Bratt* v. *International Bus. Machs. Corp.*, 392 Mass. 508, 522 n.21 (1986), and discussion *infra* at 284-285.

reasonable professional conduct for the protection of those on whom he practices from foreseeable risks. See *Small* v. *Howard*, 128 Mass. 131, 135 (1880); *Riggs* v. *Christie*, 342 Mass. 402, 405-406 (1961); Restatement (Second) of Torts §§ 282, 289, 299A; Prosser & Keeton, *supra*, § 30, at 164, § 53, at 356-358; Seavey, Principles of Torts, 56 Harv. L. Rev. 72, 75-76 (1942); Annot., What Constitutes Physician-Patient Relationship for Malpractice Purposes, 17 A.L.R.4th 132 (1982). Cf. *Palsgraf* v. *Long Island R.R.*, 248 N.Y. 339, 344-345 (1928). Although the Supreme Judicial Court in *Bratt* v. *International Bus. Machs. Corp.*, 392 Mass. 508, 522 n.21 (1984), noted that "[w]hen an employer retains a physician to examine employees, generally no physician-patient relationship exists between the employee and the doctor," it nonetheless emphasized that "[p]hysicians in such a situation . . . must still exercise reasonable care and skill in their relationship with the employees," thereby rejecting the view that no duty to the examinee is imposed in the examining physician.

The court in *Bratt* found support for its pronouncement of a duty of due care on the part of a physician, even in the absence of a technical physician-patient relationship, in *Harriott* v. *Plimpton*, 166 Mass. 585 (1896), a case which is essentially analogous to Lambley's and applies the principles discussed above. There, the defendant physician examined the plaintiff at the request of the plaintiff's prospective father-in-law after the latter had received reports that the plaintiff "had a disease and was not fit to marry." The defendant misdiagnosed the plaintiff as having a venereal disease, which resulted in the breaking of the plaintiff's engagement. In setting aside a jury verdict against the plaintiff on his negligence action against the physician, the court, *id.* at 588, said:

> "Having undertaken for compensation to be paid by another to examine the plaintiff, and to report whether he was diseased, the defendant was bound to have the ordinary skill and learning of a physician, and exercise ordinary diligence and care, and if he failed, and the plaintiff was injured because of his want of such skill and learning, or his want of such care, the defendant was answerable to him in damages. In our opinion, the fact that the purpose of the examination was information, and not medical treatment, is immaterial, and the breaking of

the plaintiff's marriage engagement in consequence of the wrong diagnosis was not too remote a damage to sustain the action." (Citations omitted.)

See *Miller* v. *West*, 165 Md. 245 (1933), and *Kleber* v. *Stevens*, 39 Misc. 2d 712 (N.Y. Sup. Ct. 1963) (both holding that lack of a doctor-patient relationship does not prevent recovery for professional negligence against mental hospital physicians who misdiagnosed plaintiffs as insane, leading to their institutionalization); and *Perkins* v. *Greenberg*, 845 P.2d 530 (Colo. 1993) (a physician to whom the plaintiff was referred for examination at the request of defendants in a vehicular accident suit, pursuant to the Colorado version of Mass.R.Civ.P. 35, 365 Mass. 793 (1974), owed the plaintiff a duty to exercise the due care and professional skill of a reasonable physician, and an action lay against him for want of professional due care even though no physician-patient relationship existed).

In our view, the duty to exercise reasonable professional care and skill recognized in *Bratt* and *Harriott* is practically indistinguishable from the duty owed by a physician to his conventional patient, at least with respect to the tortious, as opposed to the contractual, consequences of the relationship. It would be irrationally anomalous, as well as inconsistent with legislative intent, to hold (as Lambley urges) that a plaintiff who can recover in negligence against an examining physician who violates his duty of exercising professional due care by misdiagnosing, and causing foreseeable harm[12] to, the plaintiff need not first submit his action to the screening tribunal merely because he is not a voluntary, paying patient of the examining physician in the traditional sense. Substance and reality, not form and theory, must prevail. The tribunal, therefore, rightly rejected Lambley's challenge to its jurisdiction.[13, 14]

3. *Sufficiency of the offer of proof*. The tribunal erred,

_____

[12]On this record it is impossible to assert that Kameny should not reasonably have foreseen that a misdiagnosis of Lambley's psychological condition would directly harm him.

[13]Lambley's additional contention against tribunal jurisdiction, that his counts for interference and defamation, which rely on precisely the same facts as his "medical malpractice/negligence" count, are intentional torts which did not result in medical injuries, has no merit. See *Johnston* v. *Stein*, 29 Mass. App. Ct. at 997 (adopting a legal theory of intentional tort does not preclude tribunal jurisdiction if the core of the complaint is improper treatment by the physician), and the discussion, *supra* at 281-282, regarding the intended

however, as Lambley alternatively contends, in deciding that his offer of proof was insufficient[15] with respect to Dr. Kameny.[16] Apparently overlooking the frequent judicial admonitions that an offer of proof is to be given an "indulgent reading in favor of the plaintiff," *Kilmartin* v. *Lowell Gen. Hosp.*, 23 Mass. App. Ct. 901, 902 (1986); that the standard for considering expert testimony is "an extremely lenient one," *Halley* v. *Birbiglia*, 390 Mass. 540, 543 n.4 (1983); and that the evidence, including all permissible inferences therefrom, is to be taken in the light most favorable to the plaintiff, see *Blood* v. *Lea*, 403 Mass. 430, 434-435 (1988); *St. Germain* v. *Pfeifer*, 418 Mass. 511, 516 (1994), the tribunal misapplied the "directed verdict" standard to be used in evaluating the evidence before it. The question to be answered was: is there, upon any rational view of the evidence, and from whatever source derived, any combination of circumstances from which a reasonable inference of Kameny's professional negligence could be drawn in Lambley's favor? *Ibid.* See *Little* v. *Rosenthal*, 376 Mass. at 578. We have no difficulty in determining that Lambley's offer presented a litigable issue as to Kameny's liability.

---

comprehensive scope of G. L. c. 231, § 60B, whenever malpractice or treatment-related claims are involved in an action.

[14]Generally supporting our conclusion that tribunal jurisdiction in the instant circumstances does not depend on a conventional physician-patient relationship are: (1) the abolition of the requirement of privity in tort actions, see *Carter* v. *Yardley & Co.*, 319 Mass. 92, 96, 98, 103-104 (1946); and (2) the provisions of G. L. c. 233, § 20B, which accord any person who communicates with a psychotherapist, including a psychologist or psychiatrist, for the purpose of diagnosis or treatment with respect to the person's mental or emotional condition (such a person being defined by the statute as a "patient") the privilege of refusing to disclose and preventing the disclosure of any such communications.

[15]A medical malpractice plaintiff's offer of proof must establish that the defendant did not conform to accepted medical standards. *Kapp* v. *Ballantine*, 380 Mass. at 193.

[16]The tribunal, couching its decisions in the statutory formula, did not explain why Lambley's offer was nonetheless sufficient as to Seckler, whose professional relations with, testing of, methodology applied to, and conclusions regarding Lambley were exactly the same as Kameny's. The most plausible reason appears to be Seckler's admission before the Civil Service Commission that he had indeed misdiagnosed Lambley. To the extent the tribunal may have deemed Lambley's supporting expert opinion from clinical psychologist Shapse, who expressly criticized both Seckler and Kameny, to be effective against psychologist Seckler but not against psychiatrist Kameny, it would have been mistaken. See *Heyman* v. *Knirk*, 35 Mass. App. Ct. 946, 947-948 (1994); note 17, *infra*.

Seckler's disavowal, under oath, of the diagnosis that he and Kameny had jointly made should itself have been sufficient to establish an issue appropriate for judicial inquiry. If substantiated, it would have reasonably supported (although not compelled) an inference that Kameny's shared opinion about Lambley's alleged disorder was similarly medically unsound. It was not the tribunal's function to appraise the weight or credibility of such evidence. *Blake* v. *Avedikian*, 412 Mass. 481, 483 (1992).

Even without Seckler's acknowledgment of misdiagnosis, Shapse's twelve-page, single-spaced opinion (to which was attached his curriculum vitae reflecting extensive credentials in the general field of psychotherapy) provided the requisite sufficiency. It not only concluded that Dr. Kameny's diagnosis of Lambley reflected a misreading of the tests results, was unsupported by the authoritative DSM-III-R whose standards Kameny had misapplied, and was "unfounded," but went further by opining that Lambley did not in fact suffer from the passive-aggressive personality disorder Kameny had purported to find. It was not required of Shapse to state his opinion as to Kameny's perceived deficiencies in any particular form or by use of any magic words. *Nickerson* v. *Lee*, 42 Mass. App. Ct. 106, 111 (1997). The clear import of the opinion is that Kameny's examination and testing of Lambley fell below the requisite standard of care and his medical judgment was mistaken. That was enough. Shapse's detailed report, fairly read, presented more than conclusory assertions, and provided evidence from which a reasonable juror could infer sub-par professional conduct on Kameny's part.[17] See *Blake* v. *Avedikian*, 412 Mass. at 484; *Bradford* v. *Baystate Med. Center*, 415 Mass. 202, 207 n.6 (1993); *Rahilly* v. *North Adams Regional Hosp.*, 36 Mass. App. Ct. at 718 n.6; *Nickerson* v. *Lee*, 42 Mass. App. Ct. 106, 110-111 (1997).[18]

The judgment of dismissal in favor of Dr. Kameny is, accord-

---

[17]We, of course, express no opinion on the substantive merits of Lambley's claim against Kameny, who the trial evidence may show did not deviate from accepted standards of care.

[18]Dr. Kameny's arguments in favor of the tribunal's decision are that Shapse's opinion does not expressly state the applicable standard of care or that Kameny's different opinion deviated from it, and that Shapse, as a psychologist, was not qualified to address the standard of care applicable to a psychiatrist. The preceding discussion in section 4 demonstrates the fallacy of Kameny's first contention. As to the second, it has long been accepted that a

ingly, vacated, and a new decision is to be entered that Lambley's offer of proof, if properly substantiated, is sufficient to raise a legitimate question of liability appropriate for judicial inquiry.

*So ordered.*

---

plaintiff's medical expert need not be practicing in the same area as the defendant, let alone be a specialist in that area. See *Kapp* v. *Ballantine*, 380 Mass. at 192 n.7; *Commonwealth* v. *Monico*, 396 Mass. 793, 803-804 (1986); *Letch* v. *Daniels*, 401 Mass. 65, 68 (1987); *Moore* v. *Fleet Refrigeration & Air Conditioning Co.*, 28 Mass. App. Ct. 971, 972 (1990); *Heyman* v. *Knirk*, 35 Mass. App. Ct. at 948.