ANDREW CHACE & another[1] vs. ARLENE CURRAN & another.[2]

No. 06-P-1452.

Middlesex. September 6, 2007. - February 25, 2008.

Present: RAPOZA, C.J., GRASSO, & McHUGH, JJ.

*Repose, Statute of. Medical Malpractice. Negligence,* Medical malpractice,
Statute of repose, Misrepresentation. *Practice, Civil,* Claim barred by
statute of repose. *Appeals Court,* Summary disposition. *Fraud.*

In a civil action brought by a mother and her minor son alleging that the
negligence of the defendants — two health care providers — during the
son's delivery caused him to suffer permanent severe physical and mental
disabilities, the Superior Court judge properly denied the defendants' mo-
tions to dismiss the plaintiffs' amended complaint asserting fraudulent
concealment and intentional misrepresentation arising from falsification of
medical records, where the amended complaint did not constitute a mere
recasting of the original medical malpractice claims, which had been
dismissed based on the running of the applicable statutes of repose, but
rather sought recovery for an amount that the plaintiffs claimed they could
have recovered had the defendants' misrepresentation and breach of fiduciary
duty in concealing their errors not caused the plaintiffs to lose the op-
portunity to file a timely action. [260-268]

CIVIL ACTION commenced in the Superior Court Department on
June 3, 2004.

Motions to dismiss were heard by *Thomas A. Connors,* J.

A proceeding for interlocutory review was heard in the Ap-
peals Court by *Mills,* J.

*Douglas N. Perlo* for Ann Taylor.

*Robert L. Boston* for Arlene Curran.

*Elizabeth N. Mulvey (David W. Suchecki* with her) for the
plaintiffs.

RAPOZA, C.J. The defendants, both health care providers, ap-

[1]Sharon Judkins, individually and as parent and next friend of Andrew
Chace.
[2]Ann Taylor.

peal from an order of a Superior Court judge denying their motions to dismiss the plaintiffs' amended complaint. At issue is whether allegations of the defendants' intentional falsification of medical records gave rise to actions in fraud that survive the dismissal, as untimely, of the plaintiffs' underlying claims of medical malpractice. We affirm and conclude that the motion judge did not err in allowing the plaintiffs to proceed on their amended complaint.

*Background.* Sharon Judkins gave birth to Andrew Chace on September 22, 1995. During the course of the birth, Judkins exhibited signs of a complication known as a prolapsed cord, in which the umbilical cord is delivered through the vaginal canal before the fetus. As a result, Judkins's obstetrician, Dr. Robert Shannon, alerted personnel and an emergency Caesarian section procedure was performed. Upon delivery, Andrew required resuscitation due to a lack of oxygen. Present and attending to the resuscitation efforts were Nurse Shelagh Galvin and both defendants, Dr. Arlene Curran and Nurse Ann Taylor.

On March 29, 2001, the plaintiffs filed a complaint against Dr. Shannon, alleging that negligence during Andrew's delivery caused him to suffer permanent severe physical and mental disabilities. On March 25, 2004, during pretrial discovery, Nurse Galvin revealed for the first time at her deposition that the medical records prepared by Curran and Taylor were materially inaccurate and incomplete to the extent that they did not divulge that once he was delivered, Andrew was deprived of therapeutic oxygen for several minutes during the resuscitation procedure. On June 3, 2004, almost nine years after Andrew's birth, the plaintiffs commenced the present action, alleging counts of negligence, loss of consortium, emotional distress, fraudulent concealment, and intentional misrepresentation and fraud against Curran and Taylor.

A Superior Court judge allowed the defendants' motions to dismiss all counts against Curran and Taylor on the basis of the running of the medical malpractice statutes of repose applicable to minors and adults. See G. L. c. 231, § 60D, and G. L. c. 260, § 4. The plaintiffs' counts alleging fraudulent concealment and intentional misrepresentation were dismissed without prejudice, however, and leave was granted to the plaintiffs to amend them

to set forth facts with sufficient particularity.[3] See Mass.R.Civ.P. 9(b), 365 Mass. 751 (1974).

Upon the plaintiffs' later filing of an amended complaint, each defendant responded with motions to dismiss pursuant to Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974). By supporting memoranda, the defendants restated their position that the claims, even as amended, were barred by the medical malpractice statutes of repose. After a hearing, a second Superior Court judge denied both motions, concluding that the plaintiffs' amended claims were distinct from those asserting negligent medical treatment. Thus, he reasoned,

> "Notwithstanding the strong legislative policy behind the statutes of repose relating to claims brought against providers of medical services as recently articulated in *Joslyn* [v. *Chang*, 445 Mass. 344 (2005),] and *Rudenauer* [v. *Zafiropoulos*, 445 Mass. 353 (2005)], the torts of intentional misrepresentation and fraud in the context of the facts as alleged in the plaintiffs' complaint are not subject to dismissal as claims related to treatment [under G. L. c. 231, § 60D, and G. L. c. 260, § 4]. Measured against the standard which governs a motion to dismiss for failure to state a claim upon which relief may be granted under Rule 12(b)(6), those statutes of repose do not serve to bar the independent intentional torts alleged by the plaintiffs."

A single justice of this court allowed the defendants to file interlocutory appeals pursuant to G. L. c. 231, § 118.

*Discussion.*[4] In their underlying claims of malpractice against

---

[3]The plaintiffs were unsuccessful in their attempts to move for entry of a separate and final judgment pursuant to Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974), and to obtain appellate review of the judge's dismissal of the negligence counts.

[4]Before discussing the arguments raised by the defendants, we observe that the brief filed by counsel for Taylor cites to an unpublished memorandum and order of this court issued pursuant to our rule 1:28. Because it has been our past practice to prohibit the citation of such summary dispositions, we decline to consider it or to accord it any weight in deciding the present appeal. See *Lyons* v. *Labor Relations Commn.*, 19 Mass. App. Ct. 562, 566 n.7 (1985), in which we first expressed our policy that parties may not cite to rule 1:28 decisions in their briefs. (We pause to note that even if we were to consider the unpublished decision in question, the result would remain unchanged.)

Curran and Taylor, which were dismissed as untimely, the plaintiffs sought recovery for personal injuries arising out of the defendants' alleged delivery of substandard medical care in resuscitating Andrew. Their two newly amended claims, which are labeled "fraudulent concealment" and "intentional mis-representation-fraud," state a different set of facts, however. In those counts the plaintiffs aver that they were in a fiduciary relationship with Curran and Taylor on September 22, 1995, when each dictated or made intentional omissions and false and misleading statements in Andrew's patient care record concerning the events surrounding his resuscitation immediately following the birth. Specifically, they assert that neither provider noted a failed initial attempt to insert a breathing tube into Andrew or that he was left without oxygen for several minutes before a second doctor took over the resuscitation and got the oxygen flowing properly. Instead, the plaintiffs claim, the record was written in a manner that would lead them to conclude, incorrectly, that the efforts to revive Andrew proceeded without incident or without resulting personal injury to him.

The plaintiffs further allege that each defendant made the respective foregoing false statements and omissions knowing and believing that a cause of action for medical malpractice existed for their substandard care and with the intent fraudulently to conceal their lack of due care during the resuscitation process. Last, the plaintiffs claim that they were induced to rely on such

---

Many of the conditions underlying the policy we expressed in *Lyons* remain in place today. Decisions this court issues pursuant to rule 1:28 are primarily addressed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, rule 1:28 decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. In the nearly twenty-three years since we decided *Lyons*, however, our rule 1:28 decisions have become far more widely available and now routinely appear in the results of electronic research. That widespread availability leads us to take this opportunity to announce a modification of the prohibition set out in *Lyons*. A summary decision pursuant to rule 1:28, issued after the date of this opinion, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.

In an effort to ensure that all litigants have equal access to rule 1:28 decisions their adversaries may cite, the court is proposing today a rule requiring, inter alia, inclusion of the rule 1:28 decision in an addendum to the brief in which the decision is cited. Until proceedings on that proposed rule are completed, litigants should include the full text of the decision as an addendum to the brief in which it is cited.

statements and were thus prevented from timely filing suit against the defendants for their negligence prior to the running of the applicable statutes of limitations and repose.

Citing *Joslyn* v. *Chang*, 445 Mass. 344, 346-352 (2005), the defendants continue to seek refuge in the medical malpractice statutes of repose, G. L. c. 231, § 60D,[5] and G. L. c. 260, § 4,[6] applicable to minors and adults respectively, arguing that in recasting their claims for relief as intentional torts, both plaintiffs seek an improper "end run" around those statutes.[7] We agree with the defendants that irrespective of the plaintiffs' labels, so long as the "core" of the plaintiffs' amended complaint alleges improper medical treatment by the defendants, it is subject to all provisions of the medical malpractice act,[8] including applicable statutes of repose. *Johnston* v. *Stein*, 29 Mass. App. Ct. 996, 996-997 (1990). *Lambley* v. *Kameny*, 43 Mass. App. Ct.

[5]General Laws c. 231, § 60D, as appearing in St. 1986, c. 351, § 23, provides: "Notwithstanding the provisions of section seven of chapter two hundred and sixty, any claim by a minor against a health care provider stemming from professional services or health care rendered, whether in contract or tort, based on an alleged act, omission or neglect shall be commenced within three years from the date the cause of action accrues, except that a minor under the full age of six years shall have until his ninth birthday in which the action may be commenced, but in no event shall any such action be commenced more than seven years after occurrence of the act or omission which is the alleged cause of the injury upon which such action is based except where the action is based upon the leaving of a foreign object in the body."

[6]General Laws c. 260, § 4, as appearing in St. 1986, c. 351, § 30, provides, in pertinent part: "Actions of contract or tort for malpractice, error or mistake against physicians, surgeons, dentists, optometrists, hospitals and sanitoria shall be commenced only within three years after the cause of action accrues, but in no event shall any such action be commenced more than seven years after occurrence of the act or omission which is the alleged cause of the injury upon which such action is based except where the action is based upon the leaving of a foreign object in the body."

[7]Citing to documents provided by the parties in their appendix that were apparently before the motion judge, Curran also argues that the judge's legal conclusions are not supported by a reasonable interpretation of the record. A motion to dismiss for failure to state a claim pursuant to Mass.R.Civ.P. 12(b)(6), unless converted to a motion for summary judgment (which did not happen here), requires the judge to consider only the allegations of the plaintiffs' amended complaint, which he must take as true. See *Nader* v. *Citron*, 372 Mass. 96, 97-98 (1977). As discussed more fully *infra*, we conclude that under the applicable standard of review, the judge's decision is amply supported.

[8]See St. 1986, c. 351.

277, 280 (1997) ("[T]he label attached to a pleading or motion is far less important than its substance"). In our view, however, a fair reading of the amended complaint indicates that the allegations state viable causes of action for which the medical malpractice statutes of repose do not apply in these circumstances.

As noted previously, the two causes of action contained in the plaintiffs' amended complaint are labeled "fraudulent concealment" and "intentional misrepresentation-fraud." The former closely tracks the wording of G. L. c. 260, § 12,[9] which provides for the tolling of the statute of limitations if a person entitled to bring a cause of action can demonstrate that a defendant fraudulently concealed that action from his knowledge. See *Fowles* v. *Lingos*, 30 Mass. App. Ct. 435, 438-441 (1991). The plaintiffs were unsuccessful in their attempt to toll the applicable repose periods by pleading under this particular tolling provision. In amending their complaint, they now seek to maintain the same pleading as a separate cause of action. See, e.g., *McNulty* v. *Aetna Life Ins. Co.*, 305 Mass. 89 (1940) (implying existence of actionable tort of fraudulent concealment of cause of action, although concluding that facts as alleged were insufficient as matter of law to constitute fraud).

On closer examination, however, the plaintiffs' claim for fraudulent concealment is no different from their claim for intentional misrepresentation and fraud, which alleges that the defendants made false representations of material facts (related to the circumstances surrounding the resuscitation effort), with knowledge of their falsity, for the purpose of inducing the plaintiffs to act thereon, and that the plaintiffs relied upon the representations as true and acted upon them to their detriment (by letting the statutes of limitations and repose run on the potential cause of action). See *Danca* v. *Taunton Sav. Bank*, 385 Mass. 1, 8 (1982), citing *Barrett Assocs.* v. *Aronson*, 346 Mass. 150, 152 (1963). The count for intentional misrepresentation also alleges a fiduciary duty to disclose the potential cause of

---

[9]General Laws c. 260, § 12, states: "If a person liable to a personal action fraudulently conceals the cause of such action from the knowledge of the person entitled to bring it, the period prior to the discovery of his cause of action by the person so entitled shall be excluded in determining the time limited for the commencement of the action."

action. See *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424 Mass. 501, 519 (1997); *Rood* v. *Newberg*, 48 Mass. App. Ct. 185, 192 (1999) ("[N]ondisclosure may amount to fraud if a party 'is under a duty to the other [party] to exercise reasonable care to disclose the matter in question.' Restatement [Second] of Torts 551[1] [1977]"). Cf. *Maloney* v. *Brackett*, 275 Mass. 479, 482-484 (1931) (implying that doctor is bound by his fiduciary duty to his patient to disclose existence of facts upon which cause of action exists).[10] Thus, in essence, both claims sound in fraud and allege the existence of a fiduciary relationship that gave rise to a duty on the defendants' part to disclose adequately to the plaintiffs facts that would give rise to knowledge of a cause of action for substandard care in resuscitating Andrew. Leaving the issue of duplicity, if any, for the trial judge, and focusing on the gist of the entire amended complaint, we conclude that it sets forth viable claims.

We also conclude that the amended complaint is not a recasting of their original claims for medical malpractice. The newly amended allegations state that the defendants' fraudulent conduct resulted in a pecuniary loss that is not the type anticipated by the medical malpractice act. For example, the plaintiffs do not allege that Andrew suffered further personal injury or pain and suffering as a result of the defendants' omissions and misrepresentations, or that he could not take advantage of further medical treatment as a consequence. Instead, the plaintiffs seek recovery for an amount they claim they could have recovered had they not lost the opportunity to file a timely action. In these circumstances, the proper measure of damages is compensation for the pecuniary loss, if any, suffered as a result of the misrepresentation and breach of fiduciary duty. Strictly speaking, those damages are not compensation for a personal injury incurred because of substandard medical care. Contrast *Twin Fires Inv., LLC* v. *Morgan Stanley Dean Witter & Co.*, 445 Mass. 411, 423-426 (2005) (discussing appropriate award of damages in cases of intentional misrepresentation), with *Lambley* v.

---

[10]We have not been asked to rule whether, as matter of law, a nurse owes a fiduciary duty to disclose information to a patient. For purposes of this appeal, we assume without deciding that the duties owed by both medical providers in these circumstances are similar, as alleged.

*Kameny*, 43 Mass. App. Ct. at 281 (suggesting that "loss of wages; other economic detriment; pain, suffering and embarrassment — are precisely the sort contemplated under the malpractice tribunal scheme. G. L. c. 231, § 60F[*a*][2]&[3]").

The difference, although subtle, is real and is not simply an exercise in re-labeling. To succeed on their claims, the plaintiffs first must prove all of the elements of misrepresentation and fraud or fraudulent concealment discussed earlier. Here, those elements do not focus on the quality of care the defendants rendered.[11] They focus instead, on whether the defendants engaged in activity designed to hide from the plaintiffs the precise nature of the treatment they provided so that the plaintiffs would not have the knowledge they needed to sue them for it.

If the plaintiffs fail to prove that the defendants engaged in a fraudulent cover-up, then the quality of the care they actually rendered is of no relevance. If the plaintiffs are successful in proving fraud, however, then the quality of the defendants' care is relevant, but only because it supplies the measure of damages for their fraud. In other words, upon proof of fraud, evidence on the merits of the malpractice claim becomes, in effect, evidence on the issue of damages for fraud. See generally, e.g., *Fishman* v. *Brooks*, 396 Mass. 643, 647 (1986)[12]; *Jernigan* v. *Giard*, 398

---

[11]On the facts before us, some of the key issues bearing on proof of those elements relate to the nature of the defendants' fiduciary duty to disclose their own negligence, and what, if any, misrepresentations or affirmative steps were made or taken in breach of that duty; whether the defendants knew or believed they were negligent in resuscitating Andrew; and whether it was their intent to induce the plaintiffs to refrain from filing suit during the applicable limitations periods. Other issues revolve around the plaintiffs' own actions in response to the alleged failure to disclose. Because such factual disputes concerning liability require no direct inquiry into the standard of care that Andrew received during the defendants' attempts to revive him, they are distinguishable from medical malpractice claims the plaintiffs at one time had a right to bring. Contrast *Lambley* v. *Kameny*, *supra* at 280-283 (allegation that provider intentionally misstated in written medical report that plaintiff suffered from mental illness sounds in medical malpractice where "[t]he central issues raised by [the] complaint . . . are the nature and extent of [the provider's] interview, examination, and evaluation of [the plaintiff]; the soundness of [his] methodology; and the accuracy of his conclusions and diagnosis drawn therefrom" and where plaintiff alleged that he suffered economic harm, pain and suffering, and embarrassment due to provider's inaccurate reporting to third party).

[12]In *Fishman*, 396 Mass. at 647, a legal malpractice case, the Supreme

Mass. 721 (1986). The diminished role the malpractice claim plays in a fraud case distinguishes this case from cases like *Joslyn v. Chang*, 445 Mass. at 346-352, where evidence of fraud was proffered in an effort to "toll" the statute of repose and keep the malpractice claim alive. Here, as noted, the malpractice claim is gone, and without proof of fraud, the quality of the defendants' care is irrelevant.

The defendants insist, however, that all counts are subject to the medical malpractice act and its applicable statutes of repose because the plaintiffs' amended claims amount to nothing more than allegations of inaccurate record-keeping within the context of negligent medical treatment by the defendants. We disagree. The present matter, for instance, is distinguishable from *Dumes v. Genest*, 30 Mass. App. Ct. 379, 382-383 (1991), in which faulty record-keeping or retrieval on the part of the defendant medical provider was alleged to have been a factor in the poor delivery of health care to the plaintiff. There, we stated that accurate record-keeping and retrieval is necessarily a part of the duty undertaken when a physician is affiliated with a medical group, clinic, or organization providing interchangeable professionals in the course of treating a patient. *Id.* at 382. Here, the plaintiffs allege the intentional and wrongful concealment of a cause of action based on a fiduciary duty of full disclosure, a claim that does not require an assessment of policies or procedures surrounding appropriate record-keeping by a medical provider. Nor does the amended complaint contain any allegation of causation between the personal injuries Andrew incurred and the alleged inaccuracies in his medical record. Thus, in these circumstances, a breach of the professional standard of care applicable to medical record-keeping is not central to the issue of the defendants' liability.

Similarly, the case of *Johnston v. Stein*, 29 Mass. App. Ct. 996, 997 (1990), is inapposite. The plaintiff there claimed that her physician's misrepresentations caused her to undergo unnecessary surgery, which was performed in a negligent manner

---

Judicial Court discussed a "trial within a trial" as a means of determining damages for an attorney's negligent settlement of a claim the plaintiff contended he should have taken to trial. While a "trial within a trial" is surely an available means to prove damages for fraud in a case like this one, we express no opinion whether it is the only way.

and resulted in personal injury. We concluded there that the complaint, which was cast in terms of the defendant having "misrepresented" the plaintiff's condition, was actually one of medical malpractice based on an alleged breach of professional duty for failure to obtain informed consent from the patient prior to performing surgery. *Id.* at 996-997. As previously stated, the plaintiffs here do not claim to have made a treatment-related decision based upon misinformation propounded by the defendants.[13]

In sum, the defendants in the present matter allegedly misrepresented and failed to disclose certain material facts, not out of a concern to avoid error or mistake in providing medical treatment to Andrew, but for the sole purpose of hiding their errors from him and his mother. We thus do not see how the defrauding of a patient of a timely cause of action, either through silence or intentional false statements made in the patient's record, raises an appropriate question for submission to a medical malpractice tribunal, whose sole purpose under G. L. c. 231, § 60B, is to evaluate only the medical aspects of a patient's claim of malpractice. *Salem Orthopedic Surgeons, Inc.* v. *Quinn,* 377 Mass. 514, 521 (1979). Compare *Leininger* v. *Franklin Med. Center,* 404 Mass. 245, 247-248 (1989); *Brodie* v. *Gardner Pierce Nursing & Rest Home, Inc.,* 9 Mass. App. Ct. 639, 642-643 (1980); *Koltin* v. *Beth Israel Deaconess Med. Center,* 62 Mass. App. Ct. 920 (2004); *Segal* v. *First Psychiatric Planners, Inc.,* 68 Mass. App. Ct. 709, 713-715 (2007). Indeed, because the merits of the malpractice claim are relevant only as evidence of damages in the plaintiffs' fraud claim, tribunal

---

[13]Although the parties did not call our attention to *Twombly* v. *Leach,* 11 Cush. 397, 405-406 (1853), we note that it, too, is distinguishable. There, the court concluded that expert testimony on the proper standard of care is required when the issue presented is whether it is good medical practice during a medical emergency or other similar circumstances to misrepresent or withhold information from a patient concerning the extent and severity of his medical condition. Unlike here, the patient alleged, in part, that the defendant surgeon fraudulently represented her postsurgery condition and that as a consequence, the patient failed to seek further treatment that could have prevented permanent damage to her hand. The issue thus concerned whether the medical circumstances required a doctor to inform the patient about the true nature of her condition *and* whether the failure to disclose the truth caused her further personal injury.

issues are simply another piece of that evidence.[14] As this is not a malpractice claim, the tribunal has no role to play in deciding whether the action should proceed.

We recognize that statutes of repose are ironclad and in effect "abolish the remedy and [do] not merely . . . bar the action." *Joslyn* v. *Chang*, 445 Mass. at 350, quoting from *Tindol* v. *Boston Hous. Authy.*, 396 Mass. 515, 518 (1986). Our conclusion that the plaintiffs in these circumstances may proceed on alternative theories of liability is consistent with that purpose. Although statutes of repose are meant to protect health care providers from having to defend claims long after evidence is lost, witnesses have disappeared, or memories faded, *Joslyn* v. *Chang*, *supra* at 351, they do not preclude the filing of separate, otherwise valid, causes of action directly addressing alleged fraudulent behavior that allowed the invocation of such statutory protections in the first instance. See *Robinson* v. *Shah*, 23 Kan. App. 2d 812, 820 (1997) ("It seems senseless for defendant to argue that the 'gravamen' of the plaintiff's cause of action is [medical] malpractice when that action, according to the defendant, has been eliminated by the lies and fraud of the defendant herself").

The plaintiffs having met their burden under *Nader* v. *Citron*, 372 Mass. 96, 97-98 (1977), in demonstrating that they have stated actionable claims, we affirm the order denying the defendants' motions to dismiss.

*So ordered.*

---

[14]Because the question was not briefed, we express no view how evidence of those issues should be presented during the damage phase of the fraud trial.