NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1371

COMMONWEALTH

vs.

GLENN W. TODD.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the District Court, Glenn W. Todd (the defendant), was convicted of assault and battery on a public employee, in violation of G. L. c. 265, § 13D.  The defendant's conviction arose from a physical altercation that occurred when the defendant, who was in custody at the time, refused to leave a court house lockup facility, resulting in Court Officer Ross Elliot (Elliot) sustaining a knee injury. The defendant now appeals, primarily asserting that the Commonwealth presented insufficient evidence to support the

_____

[1] As is our custom, we spell the defendant's name as it appears in the complaint.  We note, however, that in the docket and several filings, including the defendant's brief, the defendant's first name is spelled "Glen."

verdict.  Because we conclude that the evidence at trial was indeed insufficient to permit a rational trier of fact to find that the defendant intentionally touched or used force against Elliot, we reverse.

Background.  We summarize the facts pertinent to our analysis as the jury could have found them.  On April 5, 2022, the defendant was being held in a lockup area in the Haverhill District Court House following a court proceeding.  At approximately 4 P.M., members of the Essex County Sheriff's Department (Sheriff's Department) arrived to transport the defendant back to the Essex County Correctional Facility (correctional facility).  At this time, the defendant, who was agitated as a result of his court proceeding, was verbally refusing to be transported back to the jail.  When the transport officers informed him that they were required to return him to the correctional facility, the defendant then asserted that he required medical treatment due to anxiety, stress, and asthma, and requested to be taken to a hospital.  As a result, Elliot, who was trained in assessing vital signs, performed a medical evaluation of the defendant and determined that he was not in need of immediate medical attention and fit for transport back to the jail.

When the defendant continued to refuse to comply, he was informed by an officer that he was "going to the van back to

jail one way or another, that the choice was his, that he could do it the easy way or he can do it the hard way." The defendant continued to refuse to comply. At that point, two deputies from the Sheriff's Department and Court Officer Michael Oliver attempted to physically restrain the defendant.[2] When the officers approached the defendant to place him in handcuffs, the defendant pulled his arms away and attempted to evade the officers by sliding along the bench he was seated on into the corner of the room. The three officers then "took him [the defendant] down to the ground to try to control him and put the cuffs on." When the defendant was on the ground, he was "squirming" and was "taking his hands and pinning them to his chest" to prevent the officers from handcuffing him.

Shortly thereafter, Elliot knelt behind the defendant to assist the three officers with applying the restraints. After Elliot was kneeling behind the defendant, one of the deputies who was positioned in front of Elliot drove his shoulder into the defendant's torso pushing the defendant into Elliot. While Elliot was unable to pinpoint the exact moment that he sustained the injury to his knee, he testified that he was injured

---

[2] The entire confrontation was captured on surveillance footage, without sound, which was entered in evidence and shown to the jury.

3

"[r]ight around when that final push came through with the other gentlemen, the other officers."

Discussion. When reviewing claims of insufficient evidence presented at trial, "we assess the evidence in the light most favorable to the Commonwealth 'to determine whether any rational trier of fact could have found each element of the crime beyond a reasonable doubt.'" Commonwealth v. Baez, 494 Mass. 396, 400 (2024), quoting Commonwealth v. Robinson, 493 Mass. 303, 307 (2024). "The evidence may be direct or circumstantial, and we draw all reasonable inferences in favor of the Commonwealth" (citation omitted). Baez, supra.

In accordance with the District Court's model jury instruction for assault and battery on a public employee at the time of trial, the judge instructed that the Commonwealth was required to prove that the defendant "intended to touch Ross Elliot in the sense that the defendant consciously and deliberately intended the touching to occur, and that the touching was not merely accidental or negligent." See Instruction 6.210 of the Criminal Model Jury Instructions for Use in the District Court (2022). "An intentional assault and battery is the intentional and unjustified use of force upon the person of another, however slight" (quotation and citation

4

omitted).[3] Commonwealth v. Porro, 458 Mass. 526, 529 (2010). The touching "may be direct, as by striking another, or it may be indirect, as by setting in motion some force or instrumentality with the intent to cause injury." Commonwealth v. Dixon, 34 Mass. App. Ct. 653, 654 (1993). "Where the touching is physically harmful, consent is immaterial, but a nonharmful touching is a battery only if there is no consent" (quotations and citation omitted). Porro, supra. To prove assault and battery under G. L. c. 265, § 13D, the Commonwealth must also prove that the offense was "committed on a public employee who was engaged in the performance of his duty at the time of the assault and battery"[4] (quotation omitted). Commonwealth v. Correia, 50 Mass. App. Ct. 455, 457 (2000), citing G. L. c. 265, § 13D (1990).

Here, the evidence even when viewed in the light most favorable to the Commonwealth reveals that the defendant did not

---

[3] The Commonwealth did not seek an instruction on reckless assault and battery, which "is committed when an individual engages in reckless conduct that results in a touching producing physical injury to another person; an unconsented touching is not sufficient" (citations omitted). Porro, 458 Mass. at 529-530. See Commonwealth v. Correia, 50 Mass. App. Ct. 455, 455-457 (2000) (on similar facts, judge properly instructed on both reckless and intentional theories). We do not reach the question whether the evidence would have been sufficient to convict on a theory of reckless assault and battery.

[4] The defendant does not dispute that Elliot was a public employee engaged in the performance of his duty at the time that the altercation occurred.

5

intentionally touch or use force against Elliot. See <u>Baez</u>, 494 Mass. at 400. The surveillance footage depicts the defendant resisting restraint and evading the officers by moving to the corner of the room, clutching his arms to his chest, and squirming while he is on the ground. After Elliot knelt behind the defendant, during the time the alleged assault and battery occurred, the surveillance footage fails to show that the defendant intentionally touched or used force against Elliot, or any other officer for that matter, in any way.[5] Furthermore, Elliot did not testify that the defendant engaged in any conduct against him amounting to intentional assault and battery.

<u>Conclusion</u>. Accordingly, the defendant's judgment of conviction for assault and battery on a public employee is

---

[5] In fact, it appears from the surveillance footage that the only time the defendant contacted Elliot, rather than Elliot contacting the defendant, was when the defendant was pushed into Elliot by the deputy.

6

reversed, the verdict is set aside, and judgment shall enter for the defendant.[6]

            <u>So ordered</u>.

            By the Court (Desmond, Grant & Hodgens, JJ.[7]),

            Clerk

Entered:  May 13, 2025.

---

[6] Because we reverse the defendant's conviction on sufficiency grounds, we need not address the defendant's additional arguments.

[7] The panelists are listed in order of seniority.