NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-771

ADOPTION OF GLADYS.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The father appeals from a decree by a judge of the Juvenile Court finding him unfit to further the welfare of his daughter and terminating his parental rights to the child. On appeal, he argues that the judge erred in (1) making impermissible and erroneous findings of fact and conclusions of law with respect to contested issues at trial, (2) failing to conduct a fair assessment of the trial evidence, and (3) declining to order posttermination and postadoption visitation. We affirm.

Discussion. 1. Findings of fact. The father argues that the judge erred by making several legally impermissible findings of fact. He first contends that the judge erred in finding that the father abused the child in the absence of evidence or testimony supporting such a finding, other than the adverse inference the judge drew based on the father's exercise of his

_____

[1] A pseudonym.

privilege, under the Fifth Amendment to the United States Constitution, when refusing to testify regarding the abuse allegations. The father argues that, because an adverse inference alone is not sufficient to support a finding, and because the record before the judge did not otherwise support a finding of abuse, such a finding was error as it was not supported by a preponderance of the evidence.

The father further asserts that the judge erred by finding that (1) he failed to comply with the action plan created for him by the Department of Children and Families (DCF), (2) he failed to address the underlying issue of sexual abuse, (3) he did not understand the child's emotional needs, and (4) the child had bonded with her kinship foster family. We address each of these arguments in turn and, concluding that there was ample support in the record to support the contested findings, discern no error.

"To terminate parental rights to a child and to dispense with parental consent to adoption, a judge must find by clear and convincing evidence, based on subsidiary findings proved by at least a fair preponderance of evidence, that the parent is unfit to care for the child and that termination is in the child's best interests." Adoption of Bea, 97 Mass. App. Ct. 416, 421-422 (2020), quoting Adoption of Jacques, 82 Mass. App.

2

Ct. 601, 606 (2012). With respect to adverse inferences, the Supreme Judicial Court has explained that

> "'[i]n a civil action, a reasonable inference adverse to a party may be drawn from the refusal of that party to testify on the grounds of self-incrimination.' No inference can be drawn, however, unless a case adverse to the interests of the party affected is presented so that failure of a party to testify would be a fair subject of comment. In other words, the adverse inference drawn from the failure of a party to testify is not sufficient, by itself, to meet an opponent's burden of proof." (Citations omitted.)

Custody of Two Minors, 396 Mass. 610, 616 (1986), quoting Wangsong v. Wangsong, 395 Mass. 154, 157 (1985).

"On appeal, '[w]e give substantial deference to a judge's decision that termination of a parent's rights is in the best interest of the child, and reverse only where the findings of fact are clearly erroneous or where there is a clear error of law or abuse of discretion.'" Adoption of Bea, 97 Mass. App. Ct. at 422, quoting Adoption of Ilona, 459 Mass. 53, 59 (2011).

a. Abuse of the child. There was ample evidence to support a finding, by a fair preponderance of the evidence, that the father sexually abused the child.[2] Among the exhibits were

---

[2] The father asserts in his brief that "[t]he judge erred when relying on this inference to find that Father harmed [the child] without more substantive evidence to support that conclusion." He does not, however, identify a specific finding of fact that declares he harmed the child. DCF argues that the judge never actually found that the father abused the child. While we discern no finding among the judge's 250 enumerated factual findings that the father sexually abused the child, the judge did state, in his conclusions of law, that "[t]he removal was

3

court reports that referenced the allegations of sexual abuse of the child by the father and of domestic violence by the father in the home. See Adoption of Luc, 484 Mass. 139, 149-150 (2020) ("Pursuant to the statutory hearsay exception declared in G. L. c. 119, § 24, court investigator reports are a 'part of the record'"). These reports also described the child's sexualized play[3] in the presence of her therapist and her notable reluctance to engage in any discussion regarding the father or the topic of "body safety." An action plan dated February 11, 2019, further stated that "Mother and Father have admitted to significant sexual abuse of [the child]" and that "[b]oth parents admitted to sexually abusing the child via 'taste-testing.'"[4] This evidence was sufficient to permit the judge to conclude that the father sexually abused the child. There was no error in the judge's drawing a negative inference against father based on the

_____

the result of sexual abuse of the child by mother and father." Irrespective of whether this statement is best characterized as a finding of fact or conclusion of law, we review to determine whether a preponderance of the evidence supports it. See Adoption of Bea, 97 Mass. App. Ct. at 421-422.

[3] The child is described in one report as "making toy chicks kiss then kissing each other's butts." When this behavior was raised, the child would apologize and attempt to change the subject. The report references additional instances of sexualized play but does not specifically describe them.

[4] An affidavit submitted by a DCF response worker described taste-testing by reporting that "[a]llegedly Father disclosed that they put a blindfold on [the child] and the parents put sugar on their genitals and had [the child] taste their genitals with her tongue."

4

father's refusal to testify regarding this subject matter.  See
Custody of Two Minors, 396 Mass. at 616.

b.  Compliance with action plan.  The father next asserts
that the judge erroneously found that he had failed to comply
with the tasks assigned to him by DCF because he was unable to
comply due to his incarceration based on the abuse charges in
the Superior Court and the subsequent conditions of his house
arrest.  Even crediting the father's claim, he fails to account
for his lack of compliance once the conditions of his pretrial
release were modified on June 9, 2021, permitting him to recover
his government identification, seek employment and housing, and
obtain other services as required.[5]  Despite this admitted
loosening of his pretrial restrictions, the father failed to
complete any portion of his action plan in the six weeks between
the modifications and his trial testimony on July 21 in the
termination trial.  Thus, there was no error in the judge's
finding that the "father had not completed any of the
recommended services on his action plan."  See Adoption of
Quentin, 424 Mass. 882, 886 (1997) ("the judge's assessment of

_____

[5] The father failed to notify the DCF social worker when his
conditions of release were modified.  The father's attorney
reached out to the social worker to inform her of the change on
June 22, 2021.  The social worker contacted the father on the
same day, at which point the father confirmed that the
conditions of his release had been favorably adjusted almost two
weeks earlier.

5

the weight of the evidence and the credibility of the witnesses is entitled to deference" [citation omitted]).

c. _Sexual offender evaluation_. The father next argues that the judge erred in concluding that he had not addressed the underlying issue of sexual abuse or engaged in other services requested by DCF aimed at addressing those concerns, and that therefore placement of the child with the father would put the child at risk of further abuse. The father contends that these findings were erroneous because he stated in an e-mail to a DCF social worker that he had contacted a provider for a sexual offender evaluation and because, in fact, there was no evidence in the record of sexual abuse on the part of father. Having addressed the latter issue supra, we turn to the father's unsupported claim in an e-mail to DCF that he had contacted a provider for a sexual offender evaluation. Because the father's assertion was unsupported by record evidence, the judge was free to discredit the arguably self-serving claim. See Adoption of Quentin, 424 Mass. at 886. Nevertheless, assuming without deciding that the father had indeed initiated the process of undergoing a sexual offender evaluation, the evaluation was indisputably incomplete at the time of trial. Thus, we discern no error.

d. _Emotional needs_. The father further contends that the judge erred in concluding that he was indifferent to the child's

6

emotional needs. He argues that his inquiries into the child's status and wellbeing, as well as his efforts to obtain reunification with the child, showed that he understood and was concerned about the child's emotional needs. The claim is unavailing because the judge was free to weigh the evidence and to make credibility determinations with respect to the father's testimony. See Adoption of Quentin, 424 Mass. at 886. In light of the allegations of abuse, in addition to the father's refusal to meaningfully engage in services required by DCF and intended to improve his parental fitness, we discern no error in the judge's finding that the father was insensitive to the child's emotional needs. See Adoption of Jacques, 82 Mass. App. Ct. at 606-609 (limited understanding of child's special needs contributed to parental unfitness).

e. Kinship placement bonding. Finally, the father argues that the judge erroneously concluded that the child would suffer psychological harm if she was removed from her foster parents, because DCF did not present expert testimony on that issue. "While not dispositive, the bond of a child with foster parents is 'a factor that has weight in the ultimate balance'" when assessing the best interests of the child. Adoption of Daniel, 58 Mass. App. Ct. 195, 202-203 (2003), quoting Adoption of Nicole, 40 Mass. App. Ct. 259, 262-263 (1996). Here, there was ample evidence in the record that the child had bonded with her

7

kinship foster family, including, inter alia, several court reports stating that "[the child] is doing well in placement" and "[the child] wants to reside with maternal great-aunt and great-uncle."[6] The judge was permitted to rely on this evidence to assess, without the support of expert testimony, that some bonding between the child and the foster parents had occurred and that removing her from the foster home would therefore cause the child psychological harm. See Adoption of Daniel, 58 Mass. App. Ct. at 203 ("Expert testimony may be necessary [to show bond with foster parents], although we do not perceive it to be a requirement in all cases" [citation omitted]). No expert testimony was required here as this finding was just one of many supporting the judge's ultimate decision to terminate the father's parental rights. See id.

2. Assessment of evidence. The father further argues that the judge failed to evenhandedly consider the evidence, and thus erred in terminating the father's parental rights. In support of this argument, the father cites portions of the record that support his reasoning with respect to his difficulty obtaining services and his justification for declining to draft a

_____

[6] The child was placed in kinship foster care with the maternal great-aunt and great-uncle immediately after being removed from the mother and father's custody. DCF's plan for the child was for adoption by the maternal great-aunt and great-uncle, which the judge found to be in the child's best interests.

parenting plan when advised to do so by a DCF social worker.[7] The father's argument here amounts to "little more than a general objection to the judge's failure to adopt [his] view of the evidence." Care & Protection of Zeb, 489 Mass. 783, 789 (2022). Again, the record contained evidence sufficient to permit the judge's findings with respect to these issues, and the judge was entitled to weigh that evidence and the credibility of witnesses when reaching his final determination. See Adoption of Quentin, 424 Mass. at 886. There was no error.

3. Visitation. Lastly, the father contends that the judge abused his discretion in denying posttermination or postadoption contact with the child because the evidence established that (1) the father and the child were bonded, (2) it appeared that the child's attitude toward the father had been negatively influenced by the preadoptive family, and (3) the preadoptive parents would not provide visitation. We disagree.

"A judge may decline to order postadoption visitation, or 'may order limited postadoption contact, including visitation, between a child and a biological parent where such contact is currently in the best interests of the child.'" Adoption of

_____

[7] The father further challenges the judge's characterization of his history with alcohol and narcotics. Where the father admitted to DCF that he "would drink once in a while" and had "experimented" with cocaine, we discern no error in the judge's finding that "Father has a known history of alcohol and cocaine use."

Saul, 60 Mass. App. Ct. 546, 556 (2004), quoting Adoption of Vito, 431 Mass. 550, 553 (2000). "An order for postadoption contact is grounded in the over-all best interests of the child, based on emotional bonding and other circumstances of the actual personal relationship of the child and the biological parent, not in the rights of the biological parent nor the legal consequences of their natural relation" (citation omitted). Adoption of Saul, supra. "Appellate review of a judge's denial of a request for postadoption visitation is under the abuse of discretion standard." Id. at 555.

Here, the judge issued 250 thoughtful findings of fact based on the trial testimony and other evidence before him. These findings support the judge's conclusion that an order of posttermination or postadoption visitation is not in the child's best interests. See Adoption of Saul, 60 Mass. App. Ct. at 556. The father's contention that he had bonded with the child is unavailing. Although, as the father argues, the mother stated to DCF that the child loved the father, the same section of the action plan quoting the mother in that respect noted that "Father didn't give [the child] much attention" and that the child described the father in negative terms. Taken together with the allegations of sexual abuse, discussed supra, we discern no abuse of discretion in the judge's determination that visitation with the father does not serve the best interests of

10

the child.[8]  See id.  See also Adoption of Quentin, 424 Mass. at 886.

Decree affirmed.

By the Court (Neyman,
   Desmond & Smyth, JJ.[9]),

*Joseph F. Stanton*

Clerk

Entered:  August 10, 2023.

---

[8] The father's argument that the foster family negatively influenced the child's attitude toward him is similarly unavailing.  See Adoption of Quentin, 424 Mass. at 886 ("the judge's assessment of the weight of the evidence and the credibility of the witnesses is entitled to deference").  See also Adoption of Saul, 60 Mass. App. Ct. at 546.

[9] The panelists are listed in order of seniority.