NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-549

COMMONWEALTH

vs.

JOHN MURPHY.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The probationer, John Murphy, appeals from an order dated February 9, 2023, denying his motion to vacate the global positioning system (GPS) monitoring condition of his probation, without prejudice to renewal of the motion in June 2024.  We affirm.

Background.  The probationer and the primary victim of his crimes both resided in Marblehead in 2009 when the defendant, then age twenty-one, supplied alcohol to several teenage girls at a house party and later raped one of them, age fourteen, in a public park while she was incapacitated.  He was convicted of two counts of rape of a child under sixteen, in violation of G. L. c. 265, § 23, and two counts of furnishing alcohol to a person under twenty-one, in violation of G. L. c. 138, § 34, and sentenced to a State prison term of nine to eleven years,

followed by a five-year term of probation.  Special conditions of probation included having no contact with the victim, no contact with children under sixteen, and GPS monitoring, which was mandatory and automatic at the time under G. L. c. 265, § 47.[1]  He was released from prison in June 2020 and was classified as a level two sex offender.

The GPS monitoring condition initially enforced an exclusion zone delineated by certain streets in Marblehead around the victim's childhood home.  In November 2020, after the probationer was detected within the exclusion zone, a Superior Court judge other than the trial judge, who had retired, modified the exclusion zone to bar the probationer from entering Marblehead, except on Saturdays.  Even on Saturdays, he was still excluded from the streets near the victim's home.

Almost a decade after the probationer's convictions, the Supreme Judicial Court held that GPS monitoring under G. L. c. 265, § 47, could no longer be imposed without an individualized determination whether the Commonwealth's public safety interests outweighed the probationer's reasonable expectation of privacy.  See Commonwealth v. Feliz, 481 Mass. 689, 699-700 (2019), S.C., 486 Mass. 510 (2020).  The

---

[1] A panel of this court affirmed the convictions.  See Commonwealth v. Murphy, 85 Mass. App. Ct. 1106 (2014).

2

probationer moved to vacate his GPS monitoring condition in 2022.

In its written opposition, the Commonwealth represented that the victim, who no longer lived in Marblehead but frequently returned to visit her mother at her childhood home, continued to fear the probationer and wished for the GPS-monitored exclusion zone to remain in effect. After a nonevidentiary hearing on the motion, the judge denied it, concluding that the Commonwealth's public safety interests justified the marginal invasion of the probationer's privacy due to GPS monitoring. The probationer appeals.

Discussion. "Although ordinarily we review a judge's decision on a motion to vacate a condition of probation for an abuse of discretion, we conduct an independent review where, as here, the judge's decision was based on a constitutional determination" (citations omitted). Commonwealth v. Roderick, 490 Mass. 669, 673 (2022). While we do not agree with every aspect of the motion judge's decision, we agree that at the time of the hearing, continued GPS monitoring was justified.

GPS monitoring constitutes a search under the Fourth Amendment and art. 14. See Roderick, 490 Mass. at 672. Because such a search is more than minimally invasive, it requires an individualized determination of reasonableness under art. 14. See Feliz, 481 Mass. at 699-700. A probationer has "a

3

significantly diminished expectation of privacy" and is presumed "more likely than the ordinary citizen to violate the law" (citations omitted). Roderick, 490 Mass. at 673. Even so, because GPS monitoring is a significant intrusion on a probationer's liberty and privacy interests, the Commonwealth must demonstrate how its legitimate public safety interests outweigh the probationer's "expectation of privacy in his real-time location information." Id. at 673-674. We evaluate the strength of the Commonwealth's interests by considering "the probationer's risk of recidivism and the danger posed to society should he or she reoffend; as the probationer's risk of reoffense and degree of dangerousness increases, so too does the weight of the government's interest." Id. at 673.

We begin by acknowledging the nature and severity of the crimes. A probationer's degree of dangerousness, and thus the Commonwealth's "interest in deterrence and investigation," increases with the severity of the crime. Roderick, 490 Mass. at 682. The probationer was convicted of two counts of rape, "one of the most serious crimes punishable by law." Id. at 682, quoting Commonwealth v. Sherman, 481 Mass. 464, 473 (2019). The seriousness of the probationer's offenses was aggravated by the youth of the victims and the probationer's criminal actions to induce the rape victim's incapacity. We likewise consider the probationer's classification as a level two sex offender: a

4

determination, based on clear and convincing evidence, that he poses a moderate risk of reoffense and a moderate degree of dangerousness. See Roderick, supra at 680; G. L. c. 6, § 178K (2) (b). "[T]he government has a valid interest in deterrence and investigation where the Commonwealth provides sufficient evidence that a defendant poses a demonstrable risk of reoffending." Roderick, supra at 679.

We also consider, as did the motion judge, that shortly after his release from prison in 2020, the probationer triggered a GPS alert when a vehicle in which he was a passenger breached the exclusion zone near the victim's childhood home. Although the probationer was not the driver, called the probation department when the bracelet alerted, and was not found in violation of the terms of probation, this incident nonetheless demonstrated a serious lapse of judgment on his part, with nontrivial public safety implications.

On the other hand, we do not attach as much significance as the motion judge did to the defaults and violations of probation that occurred prior to the probationer's convictions of rape of a child and furnishing alcohol. Those violations occurred when the probationer, who is now in his mid-thirties, was in his late teens or early twenties and have little bearing on his current risk of violating the terms of probation. The record suggests no misconduct in prison, and the probationer was released on

5

parole when he first became eligible.  Apart from the single GPS alert, the probationer's violation-free record on his current term of probation is far more indicative of his risk of reoffense than his record from 2008 and 2009.

The judge also erred by failing to consider a letter, offered through counsel, from the probationer's current licensed mental health counselor, which apparently discussed the probationer's recent treatment and the counselor's risk assessment.  The judge refused to receive the letter because it was not a "psychiatric diagnosis" from a medical doctor. Although a psychiatrist's diagnosis and testimony were considered in Feliz, 481 Mass. at 705-706, nothing in that decision requires a formal psychiatric diagnosis to the exclusion of all other evidence of a probationer's prognosis and risk level.  However, as the letter was not made part of the record, we are unable to determine that the probationer was prejudiced by the judge's failure to consider it.

The defendant asserts that the GPS-enforced exclusionary zone cannot be appropriately applied because the victim no longer resides at her childhood home and was, understandably, unwilling to disclose her current residence.  He further argues that the Commonwealth cannot justify GPS monitoring where the victim has not testified about why GPS-enforced exclusion from

all of Marblehead is necessary, not merely desirable, for her peace of mind.  We disagree.

In Roderick, 490 Mass. at 681-682, although the court vacated the GPS monitoring condition, it stated, "There is little question that the Commonwealth's interest in enforcing the exclusion zone around the victim's home, in conjunction with its interest in deterring and investigating future sex offenses, would have outweighed the incremental privacy intrusion occasioned by GPS monitoring in the instant case."  Here, although the exclusion zone is not perfectly tailored to the victim's current circumstances, it nonetheless protects the victim's safety by providing her a "safe haven" at her childhood home and "prevent[ing] further victimization."  Id. at 677. Indeed, the prosecutor represented that the thought of the probationer not being GPS monitored was "extremely upsetting to [the victim]."

Given the seriousness of the offenses, the probationer's level two sex offender classification, his 2020 violation of the exclusion zone, and the fact that the zone, while not perfectly configured, reasonably serves the Commonwealth's interest in protecting the victim, we conclude that the overall balance of interests at the time of the motion hearing justified continued GPS monitoring.

7

Finally, we note that in Roderick, 490 Mass. at 683, the court stated that "the degree of intrusion upon the defendant's privacy occasioned by GPS monitoring is aggravated by the fact that the defendant was ordered to wear a GPS device for three years."  Here the motion judge was cognizant of the fact that the probationer had been subject to GPS monitoring for over two and one-half years at the time of the hearing and, with one exception, had been in compliance.  Accordingly, the judge denied the motion without prejudice, inviting the probationer to renew the motion in 2024, assuming continued compliance.  The judge appropriately recognized that because the burden on the defendant's liberty increases over time, see id., the balance of interests may shift.[2]

Conclusion.  We affirm the February 9, 2023, order denying the motion to vacate the GPS monitoring condition of probation, without prejudice to renewal in June 2024.  Proceedings on any

---

[2] We also note that the exclusion zones may be maintained as a condition of probation without enforcement by GPS monitoring.

renewed motion shall be conducted consistently with this decision.

So ordered.

By the Court (Milkey,
  Massing & Neyman, JJ.[3]),

*Paul Little*

Assistant Clerk

Entered:  May 22, 2024.

---

[3] The panelists are listed in order of seniority.