NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-953

COMMONWEALTH

vs.

SHAWN HUNT.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a trial in the Superior Court, the defendant was convicted of murder in the second degree.  In this appeal, the defendant argues that the motion judge erred in denying his second motion for a new trial[1] and doing so without holding an evidentiary hearing.  We affirm.[2]

_____

[1] After the defendant noticed an appeal from the conviction, the trial judge denied the defendant's first motion for a new trial.  The defendant's appeal from that order was consolidated with his direct appeal; a different panel of this court affirmed both in an unpublished memorandum and order.  Commonwealth v. Hunt, 101 Mass. App. Ct. 1121 (2022).  A different judge denied the defendant's second motion for a new trial.

[2] Because we conclude that the defendant's claim is barred by direct estoppel, we need not reach the defendant's argument that the judge erred by refusing to hold an evidentiary hearing.

Background.  In summary, the trial evidence showed that the victim was shot and killed in a drive-by shooting in New Bedford on the evening of November 20, 2003.  An eyewitness described the vehicle involved in the drive-by shooting as a Ford Focus that looked teal blue, driven by a Black man wearing a black "doo-rag."  About two days later, police seized a royal blue Ford Focus that was rented by the defendant and being driven by Corey Hubbard.  In the car's passenger door pocket was a shell casing of the same caliber bullet as those used in the shooting, in its center console was a doo-rag, and elsewhere in the vehicle was unopened mail addressed to the defendant.  At the scene of the seizure of the defendant's royal blue Focus was a navy blue Ford Focus rented from the same car dealership and driven by Lamont Todman.  Todman was not detained during this encounter.

At trial, Todman's testimony identified the defendant's motive and explained the absence of certain evidence.  The Commonwealth's theory was that the shooting arose out of a fight between the defendant, the victim, and others that had occurred a month prior.  Todman corroborated this theory, testifying that the defendant was beaten up "pretty bad" by the victim, who was "talking shit about it" to others.  Todman testified that this angered the defendant.  After the shooting, the defendant left

2

town and gave the keys to his Ford Focus to Hubbard, who parked the car on the side of his building. Todman testified that Hubbard gave him the keys and told him to clean the car. Todman took the car to a car wash, where he vacuumed the floor and seats of the car. He saw a shell casing in the back seat, which he vacuumed up.

The Commonwealth agreed not to charge Todman with committing a crime related to the incident in exchange for his truthful testimony. The defendant was on notice of this agreement.

After agreeing to testify against the defendant, Todman was arraigned in two unrelated criminal matters. On November 10, 2010, a State trooper conducted a motor vehicle stop of Todman, who was driving with three children, and found drugs in the car. The trooper did not arrest Todman and advised him that he would receive a summons to appear in court. The Commonwealth subsequently dismissed this charge. On April 6, 2011, the same trooper stopped Todman while he was traveling in a car with a child and found drugs in the car. The trooper did not arrest Todman and advised him that he would have to appear in court at a later date to face a charge of possession of a class B substance with intent to distribute. The Commonwealth subsequently reduced the charge to possession of a class B

3

substance, and Todman admitted to sufficient facts on that charge.

In his first motion for a new trial, the defendant argued that the prosecution improperly withheld evidence that Todman was "actively dealing drugs while cooperating with the Commonwealth," and that it had provided undisclosed inducements to Todman in the form of "extraordinarily lenient treatment." The trial judge held an evidentiary hearing at which the trooper who conducted the motor vehicle stops of Todman testified. The trial judge denied the motion for a new trial and credited the trooper's testimony that he did not know of Todman's status as a testifying witness during the November 10 stop and chose not to arrest Todman because "that would have meant taking the three officers off the streets to book him and process the paperwork," and would also have required the trooper to arrest Todman in front of his children and then make arrangements for them. The trooper testified that he chose not to arrest Todman on April 6 for the same reasons. However, the trooper was aware of Todman's status as a witness at this point. The trial judge found that the trooper's treatment of Todman did not tend to show the existence of an undisclosed agreement between Todman and the Commonwealth.

4

In his first motion for a new trial, the defendant also took issue with the Commonwealth's destruction of its records related to Todman's drug charges in 2010 and 2011.  This is also the core issue of the instant appeal.  The trial judge found the following:

> "By the time [the defendant] filed his motion for a new trial, the District Attorney's case files on Todman's earlier cases had been destroyed in the ordinary course of business, but police reports concerning the arrests were produced from police files.  The court finds no credible evidence that Todman ever received consideration from the Commonwealth beyond that disclosed to [the defendant's trial attorney]."

In his second motion for a new trial, the defendant argued that the Commonwealth's destruction of Todman's case files constituted improper destruction of exculpatory evidence.  The motion judge denied this motion without an evidentiary hearing, in a handwritten endorsement incorporating by reference the Commonwealth's memorandum of law in opposition.

Discussion.  The Commonwealth argues that the defendant's claim that the Commonwealth improperly destroyed exculpatory evidence is barred by direct estoppel.  We agree.

Direct estoppel operates "as a bar to the defendant's attempt . . . to relitigate issues."  Commonwealth v. Rodriguez, 443 Mass. 707, 711 (2005).  "For direct estoppel to apply, the Commonwealth must show that the issues raised in the defendant's . . . motion were actually litigated and determined . . ., that

5

such determination was essential to the defendant's conviction, and that the defendant had an opportunity to obtain review of the determination."  Id. at 710.

Here, the defendant's second motion for a new trial relies on a claim that was already argued and decided in his first motion for a new trial.  In the first motion, the defendant argued that the Commonwealth suppressed evidence that Todman received inducements in exchange for his cooperation in the defendant's prosecution.  In the second motion, the defendant argued that the Commonwealth destroyed evidence of the additional, undisclosed inducements requested by the defendant after his conviction.  Though the two arguments differ slightly, they both require the defendant to show that the evidence in question -- the supposed undisclosed inducements -- is exculpatory.  See Commonwealth v. Pope, 489 Mass. 790, 798 (2022) (defendant can obtain new trial on grounds that Commonwealth failed to disclose certain evidence if that evidence was, inter alia, exculpatory); Commonwealth v. Murphy, 442 Mass. 485, 495 (2004) ("A defendant who seeks relief from the loss or destruction of potentially exculpatory evidence has the initial burden . . . to establish a reasonable possibility . . . that access to the [evidence] would have produced evidence favorable to his cause" [quotations and citation omitted]).

Because both motions for a new trial require the defendant to show that the evidence of undisclosed inducements was exculpatory, the defendant's claim is barred because that issue was already "litigated and determined," that determination was "essential" to the disposition of the first motion, and the denial of the first motion was subject to appellate review. Rodriguez, 443 Mass. at 710. Whether the evidence in question was exculpatory was an issue litigated at the evidentiary hearing on the first motion. Following that hearing, the trial judge found no prosecutorial misconduct because "[the defendant] simply has failed to prove that Todman in fact received preferential treatment in exchange for his testimony." The defendant subsequently appealed to this court, where a panel held that the trial judge's findings of fact were not clearly erroneous and supported his conclusions of law. Commonwealth v. Hunt, 101 Mass. App. Ct. 1121 (2022). The defendant's second motion did not offer any new evidence, other than an affidavit from the prosecutor who handled Todman's plea agreements in 2012. The affidavit did not provide any additional material information because the prosecutor could not specifically recall Todman's cases or the thinking behind the Commonwealth's sentencing recommendations. Because the defendant raises no new

7

factual or legal issues, we conclude that his claim is barred by direct estoppel.  See Rodriguez, 443 Mass. at 710-711.

> Order denying second motion
>    for new trial affirmed.
>
> By the Court (Meade, Shin &
>    Tan, JJ.[3]),

Clerk

Entered:  August 20, 2025.

---

[3] The panelists are listed in order of seniority.